**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**
**EAST ST. LOUIS DIVISION**

| | | |
|---|---|---|
| DENNIS LANCASTER, individually and on behalf of all similarly situated individuals, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 3:23-cv-1914 |
| LEWIS AND CLARK COMMUNITY COLLEGE, | ) ) ) | |
| Defendant. | ) ) | |

## DEFENDANT'S NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332(d), 1141, and 1146, Defendant Lewis and Clark Community College ("Lewis & Clark" or "Defendant"), hereby removes this action filed by Plaintiff Dennis Lancaster ("Plaintiff"), individually and on behalf of all similarly situated individuals, from the Circuit Court for the Third Judicial Circuit, Madison County, Illinois, to the United States District Court for the Southern District of Illinois, East St. Louis Division.  In support of this Notice of Removal, Lewis & Clark states as follows:

## JURISDICTION AND VENUE

1.      This is a civil action over which the Court has original subject matter jurisdiction under 28 U.S.C. § 1332.  Removal is proper under the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d).

2.      This Court is in the judicial district and division embracing the place where the state court case was brought and is pending.  Thus, this Court is the proper district court to which this case should be removed.  28 U.S.C. §§ 1441(a), 1446(a).

## BACKGROUND TIMELINESS OF REMOVAL

3.     Plaintiff Dennis Lancaster filed his Class Action Complaint (the "Complaint") on April 20, 2023, in the Third Judicial Circuit Court for Madison County, Illinois, captioned *Dennis Lancaster v. Lewis & Clark Community College*, Case No. 2023LA000615 (the "State Court Action"). Plaintiff filed the Complaint as a putative class action.

4.     On May 4, 2023, Plaintiff served Lewis & Clark with a copy of the Summons and Complaint filed in the State Court Action. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all documents received in the State Court Action by Lewis & Clark are attached hereto as Exhibits. Specifically, attached to this Notice of Removal are true and correct copies of (1) the operative Complaint (**Exhibit A**); (1) the Summons (**Exhibit B**); and (2) the State Court Action docket (**Exhibit C**).

5.     No further pleadings or documents (*i.e.*, answers, responses, replies to pending motions, notices of appearance, or state court orders terminating or dismissing parties) have been filed in the State Court Action.

6.     This removal is timely because Lewis & Clark filed this Notice of Removal within 30 days of being served with the Complaint. *See* 28 U.S.C. § 1446(b) (notice of removal shall be filed within 30 days of service); *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999) (time period for removal begins when the defendant is served).

## CAFA JURISDICTION

7.     <u>Basis of Original Jurisdiction</u>. This Court has original jurisdiction over this action under CAFA (codified in pertinent part at 28 U.S.C. § 1332(d)). Section 1332(d) provides that a district court shall have original jurisdiction over a class action with one hundred (100) or more putative class members in which the matter in controversy, in the aggregate, exceeds the sum or

value of $5,000,000, and any member of the putative class is citizen of a different state than that

of the defendant. *Kurz v. Fid. Mgmt. & Rsch. Co.*, No. 07-cv-592-JPG, 2007 WL 2746612, at *2

(S.D. Ill. Sept. 18, 2007) (collecting cases).

8.      As set forth below, pursuant to 28 U.S.C. § 1332(d) and § 1441(a), Lewis & Clark

may remove the State Court Action to federal court under CAFA because: (i) this action is pled

as a class action; (ii) the putative class includes more than one hundred members; (iii) "minimal

diversity" exists, *i.e.*, at least one member of the putative class is a citizen of a state different

from that of Defendant; and (iv) the matter in controversy, in the aggregate, exceeds the sum or

value of $5,000,000, exclusive of interest and costs. *See Schutte v. Ciox Health, LLC*, 28 F.4th

850, 853 (7th Cir. 2022).

## THE ACTION IS PLED AS A CLASS ACTION

9.      "CAFA defines a class action as 'any civil action filed under rule 23 of the

Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing

an action to be brought by 1 or more representative persons as a class action.'" *Warma v.

NBTW, Inc.*, No. 09–cv–144–DRH, 2009 WL 3230023, at *1 (S.D. Ill. Oct. 2, 2009) (quoting 28

U.S.C. § 1332(d)(1)(B)).

10.     Plaintiff brings this action as a "class action" defined as "[a]ll individuals residing

in Illinois whose PII and/or PHI was compromised in the Data Breach disclosed by Lewis and

Clark on or about April 21, 2022." [Compl., ¶ 52.]  Although Plaintiff does not state the statute

or rule pursuant to which he seeks to bring a class action, because this case was filed in Illinois

state court, Plaintiff presumably seeks to bring a class action pursuant to Illinois rules and/or

statues concerning class actions, or 735 Ill. Comp. Stat. 5/2-801.

11.     Because 735 Ill. Comp. Stat. 5/2-801 is a "similar State statute authorizing an action to be brought by 1 or more representatives as a class action," *see LG Display Co., Ltd. v. Madigan*, 665 F.3d 768, 771 (7th Cir. 2011) (stating that 735 Ill. Comp. Stat. 5/2-801 is the Illinois "state equivalent" to Federal Rule of Civil Procedure 23), the first CAFA requirement is satisfied.

## THE PUTATIVE CLASS INCLUDES
## AT LEAST ONE HUNDRED (100) MEMBERS

12.     Plaintiff alleges that in November 2021, Lewis & Clark experienced a "ransomware incident" that impacted "thousands of persons," including current and former students and employees' personal and medical information (the "Data Incident"). [Compl., ¶¶ 1, 3.] Plaintiff further alleges that he received notice of the Data Incident from Lewis & Clark on April 2022. [*Id.* at ¶ 5.]

13.     Plaintiff now purports to bring a class action on behalf of "[a]ll individuals residing in Illinois whose PII and/or PHI was compromised in the Data [Incident] disclosed by Lewis and Clark in or about April 21[,] 2022." [*Id.* at ¶ 52.]

14.     Further, Plaintiff assert that "thousands of persons" were impacted by the Data Incident. [*Id.* at ¶ 1; *see also id.* at ¶ 55 ("There are thousands of potential Class members.").]

15.     Lewis & Clark sent data incident notification letters to approximately 37,846 individuals with Illinois addresses.

16.     Based on the above, the number of putative class members exceeds the statutorily-required minimum of 100 individuals. *See Schutte*, 28 F.4th at 855 (stating that defendant "was entitled to take at face value the complaint's allegation of 'several thousand' class members" for purposes of satisfying CAFA); *see also Roppo v. Travelers Com. Ins. Co.*,

869 F.3d 568, 581 (7th Cir. 2017) (defendant attempting to satisfy jurisdictional requirements "may rely on the estimate of the class number set forth in the complaint").

## MINIMAL DIVERSITY OF CITIZENSHIP

17.     Pursuant to 28 U.S.C. § 1332(d)(2)(A), "the district court shall have original jurisdiction" over a "class in which . . . *any member of the class of plaintiffs* is a citizen of a State different from *any defendant*."  (emphasis added).  *See also Cooks v. Hertz Corp.*, Case No. 15-CV-652-NJR-PMF, 2016 WL 2986234, at *1 (S.D. Ill. Apr. 20, 2016) ("[U]nder CAFA, only 'minimal diversity' between the parties is required.").  Accordingly, if any member of the purported class is a citizen of a state different than the state of citizenship of Lewis & Clark, then minimal diversity exists.  *See Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 732 (7th Cir. 2017) (stating that "because CAFA requires 'minimal diversity,' jurisdiction was appropriate in the district court as long as at least one person who would be a member of the class [plaintiff] sought to represent was a citizen of a state other than Illinois," the state of citizenship of the defendant).

18.     Lewis & Clark's Citizenship.  Pursuant to 28 U.S.C. § 1332, Lewis & Clark is a local community college with locations in Edwardsville, Godfrey, and East Alton, Illinois and with headquarters in Illinois.  As an Illinois community college, it is considered a "political subdivision" of Illinois.  *See Am. Ctr. for Excellence in Surgical Assisting Inc. v. Cmty. Coll. Bd. of Trs. of Cmty. Coll. Dist. 502*, 315 F. Supp. 3d 1044, 1054 (N.D. Ill. 2018) (holding that "a community college district is a 'unit of local government' and therefore a 'political subdivision' subject to the Local Government Selection Act") (quoting *Cty. of Du Page v. Dep't of Prof'l Regulation*, 842 N.E.2d 1255, 1265 (Ill. App. Ct. 2006)); *see also Marsden v. Kishwaukee Cmty. Coll.*, 572 F. Supp. 3d 512, 527 (N.D. Ill. 2021).  Thus, as a "political subdivision" of Illinois, Lewis & Clark is a citizen of Illinois for purposes of CAFA.  *See Pinellas Cty. v. Great Am.*

*Indus. Grp., Inc.*, No. 90 C 5254, 1991 WL 259020, at * 1 (N.D. Ill. Dec. 2, 1991) ("As a general rule, the political subdivision of a state . . . is a citizen of the state for diversity purposes.") (citing *Moor v. Cty. of Alameda*, 412 U.S. 693, 717-18 (1973)); *see also Lansing Cmty. Coll. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 681 F. Supp. 2d 868, 873 (W.D. Mich. 2010) (public community colleges considered "political subdivisions"). Accordingly, Lewis & Clark is a citizen of Illinois for CAFA purposes.

19.    <u>Plaintiff's Citizenship</u>. With respect to diversity jurisdiction, a party's citizenship is determined by their domicile. *See Denlinger v. Brennan*, 87 F.3d 214, 216 (7th Cir. 1996); *Guar. Nat'l Title Co., Inc. v. J.E.G. Assoc.*, 101 F.3d 57, 58-59 (7th Cir. 1996) (citizenship, not residence, matters for diversity jurisdiction); *Meyerson v. Harrah's E. Chi. Casino*, 299 F.3d 616, 617 (7th Cir.2002) ("[R]esidence and citizenship are not synonyms and it is the latter that matters for purposes of the diversity jurisdiction."). "Domicile" refers to the place where one resides and intends to remain. *Kabes v. Sch. Dist. of River Falls*, 387 F. Supp. 2d 955, 977 (W.D. Wis. 2005) (citing *Dakuras v. Edwards*, 312 F.3d 256, 258 (7th Cir. 2002)). A person's state of residency is not equivalent to domicile (nor, therefore, citizenship), although residency is one factor to be considered in the domicile analysis. *Denlinger*, 87 F.3d at 216 ("[I]t takes physical presence in a state, with intent to remain there, to establish domicile."); *see also Cassens v. Cassens,* 430 F. Supp. 2d 830, 833 (S.D. Ill. 2006) ("Citizenship' for diversity purposes is determined . . . by a party's domicile, which means the state where a party is physically present with an intent to remain there indefinitely.").

20.    As alleged in the Complaint, Plaintiff is an "individual who resides in Edwardsville, Illinois" and is a former student of Lewis and Clark who provided personal data to

Lewis and Clark.  [Compl., ¶ 11.]  Accordingly, absent any information to the contrary, Plaintiff is a citizen of Illinois for purposes of diversity jurisdiction.

21.    Plaintiff, however, also seeks to represent a class that includes "[a]ll individuals residing in Illinois whose PII and/or PHI was compromised in the Data Breach disclosed by Lewis and Clark on or about April 21, 2022."  [*Id.* at ¶ 52.]  Plaintiff does not make clear in his definition of the class whether the class includes individuals who were residing in Illinois when they provided their information to Lewis & Clark, when they attended Lewis & Clark, when the Data Incident occurred, when Lewis & Clark sent notice of the Data Incident, at the time the Complaint was filed, or at the time this Notice of Removal was filed.  Furthermore, to date, Lewis & Clark has sent notice of the alleged Data Incident to individuals with addresses in 48 states other than Illinois and to individuals with addresses of military bases in Europe.  And, even the individuals for whom Lewis & Clark had an Illinois address, many of them also had reported addresses outside of Illinois, which is not surprising given that Lewis & Clark operates a community college near the border of several states.  Because (a) residency alone is not equivalent to domicile and because (b) Lewis & Clark is a college that serves both out-of-state[1] and international students[2] with campuses on the Illinois state border,[3] it is more likely than not that some, if not many, of those Illinois "residents" who received a notification letter are not "citizens" of Illinois for purposes of CAFA jurisdiction.  *See, e.g.*, *Troyer v. Jeff Foster Trucking, Inc.*, Civil No. 10–258–GPM, 2010 WL 1797623, at *2 (S.D. Ill. May 4, 2010) (stating

---

[1] *How Much Does Lewis and Clark College Charge for Tuition?*, College Factual, https://www.collegefactual.com/colleges/lewis-and-clark-community-college/paying-for-college/tuition-and-fees/ (Lewis & Clark offers both in-state and out-of-state tuition) (last visited June 1, 2023).
[2] *International Students*, https://www.lc.edu/international/ (last visited June 1, 2023).
[3] *Why L&C: Blazing a Trail*, https://www.lc.edu/discover/ (stating that Lewis & Clark has "[m]ultiple campuses in Godfrey, Edwardsville & Alton" and offers "easy access to St. Louis[, Missouri]") (last visited June 1, 2023).

that a "proper allegation" of citizenship for diversity purposes is not synonymous with "residency"). Further, because "citizenship" of an individual is determined at the time of removal, *see Cleary v. Phillip Morris Inc.*, 656 F.3d 511, 515 (7th Cir. 2011) (citation omitted); *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007), and Plaintiff does not otherwise limit his class definition to "current" Illinois residents or citizens, it is at likely that at least some prior Illinois residents who were impacted in the Data Incident were residents or even citizens of other states at the time of removal.

22.     In short, the class, as defined by Plaintiff, includes individuals who, in the absence of other evidence to the contrary, may be residents—but not citizens—of Illinois, the state of citizenship of Lewis & Clark. Said differently, because at least one putative class member is a citizen of a state other than the state of citizenship of Lewis & Clark, "minimal diversity" is established pursuant to CAFA. *See Johnson v. Prisoner Transp. Servs., Inc.*, Case No. 21-C-0254, 2021 WL 1661273, at *2 (E.D. Wis. Apr. 28, 2021) (stating that "even if the plaintiff resided in Canada when the complaint was filed, he could have been a lawful permanent resident of the United States" and reiterating that "for jurisdictional purposes, residence is not the same thing as domicile").

## THE AMOUNT IN CONTROVERSY EXCEEDS THE CAFA THRESHOLD[4]

23.     Where a complaint does not specify the damages amount sought, as is the case with Plaintiff's Complaint, the removing defendant must prove by a preponderance of the evidence that the jurisdictional amount in controversy is satisfied. 28 U.S.C.A. § 1446(c)(2)(B).

---

[4] The amounts set forth in this Notice of Removal are solely for purposes of establishing that the amount in controversy exceeds the $5,000,000 threshold and are not intended and cannot be construed as an admission that Plaintiff or putative class members can state or have stated a claim or that they are entitled to damages in any amount. Lewis & Clark denies liability, denies Plaintiff and/or class members are entitled to recover any amount, and denies that a class can be properly certified in this matter.

The United States Supreme Court has held that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" to meet the amount-in-controversy requirement. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 90 (2014). Further, a removing party "needs to provide only a 'good-faith estimate' that is 'plausible and adequately supported by the evidence' to satisfy the amount-in-controversy requirement." *Schutte*, 28 F.4th at 854 (quoting *Blomberg v. Serv. Corp. Int'l*, 639 F.3d 761, 763 (7th Cir. 2011)). The amount in controversy is satisfied unless it appears to a "legal certainty" that the plaintiff cannot actually recover that amount. *Roppo*, 869 F.3d at 579 (quoting *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541 (7th. Cir. 2006)). Additionally, in determining the amount in controversy under CAFA, the claims of all plaintiffs are aggregated to determine if the amount in controversy is more than $5,000,000. *G.M. Sign Inc. v. Silverman Enters.*, 09 C 965, 2009 WL 10701000, at *1 (N.D. Ill. July 23, 2009) ("The defendant may aggregate the claims of the class members to reach the jurisdictional amount."); *Roppo*, 869 F.3d at 576 (district court concluded that "'[e]ven if the alleged additional damages of each putative class member were as small as $10,000,'" as Travelers had estimated, "'then the aggregate damages for the putative class would nevertheless exceed the requisite amount of $5 million (i.e., 500 x $10,000 = $5 million'"). Finally, in determining the amount in controversy, the Court should accept the removing party's allegations as true and require only a "good-faith estimate . . . [that] is plausible and adequately supported by the evidence." *Blomberg*, 639 F.3d at 736 (citation omitted). The removing party "does not need to establish what damages the plaintiff will recover, but only how much is in controversy between the parties." *Id.* (citing *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005)); *see also Schutte*, 28 F.4th at 854 ("In addressing such issues about amounts in controversy, it is critical for courts to focus on

the phrase 'in controversy' and to remember the difference between even highly unlikely results and truly impossible results, and to avoid prematurely trying the merits of the case in deciding jurisdiction.").

24.   Here, Plaintiff seeks damages in the form of "declaratory and other equitable relief," "injunctive relief as is necessary to protect the interests of Plaintiff and the Class"; "compensatory, exemplary, punitive damages, and statutory damages, including pre- and post-judgment interest"; "restitution and damages to Plaintiff and the Class"; "attorneys' fees and costs, as allowed by law"; and "such other or further relief as may be appropriate under the circumstances."   [Compl., Prayer for Relief.]   Plaintiff also claims that he and Class members have suffered injury and damages, including, but not limited to:

> (a) The loss of the opportunity to control how their PII and PHI are used; (b) diminution in value of their PII and PHI; (c) The compromise and continuing publication of their PHI and PII; (d) Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud; (e) Lost opportunity costs and lost wages associated with the time and effort expended addressing and trying to mitigate the actual and future consequences of the Data [Incident] . . .; [and] (f) Unauthorized use of stolen PII and PHI; and the continued risk to their PHI and PII . . .

[*Id.* at ¶ 38.]   Plaintiff also claims he and members of the class "suffered actual damages in an amount equal to the difference in value between their purchases made with reasonable data privacy and security practices and procedures that [they] paid for, and those purchases without unreasonable data privacy and security practices and procedures they received" and request that Lewis & Clark "be compelled to disgorge into a common fund . . . all unlawful or inequitable proceeds received to it as a result" and be "[e]njoin[ed] . . . from further deceptive and unfair practices and making untrue statements about the Data [Incident.]"   [*Id.* at ¶¶ 92, 94; Prayer for Relief(D).]

10

25.     As demonstrated below, the allegations in the Complaint make it more likely than not that the amount in controversy under CAFA exceeds $5,000,000.

26.     <u>Negligence</u>.   Plaintiff states a claim for negligence, arguing that Plaintiff and members of the class "entrusted their PII and PHI to Lewis and Clark" and that Lewis & Clark had a "duty to exercise reasonable care in handling and using the PII and PHI in its care and custody, including implementing industry-standard security procedures sufficient to reasonably protect the information from the Data [Incident][.]"   [Compl., ¶¶ 64-72.]   Plaintiff also claims that Lewis & Clark had a duty to "notify them within a reasonable time frame of any breach of the security of their PII and PHI."   [*Id.* at ¶ 67.]

27.     Plaintiff alleges that Lewis & Clark breached these and other duties, and therefore was negligent, by failing to "adequately safeguard their PII and PHI in accordance with state-of-the-art industry standards for data security" and by acting in "wanton and reckless disregard for the security and confidentiality of Plaintiff's and members of the class's PII and PHI by disclosing and providing access to this information to third parties and by failing to properly supervise both the way the PIII and PHI was stored, used, and exchanged, and those in its employ who made that happen."   [*Id.* at ¶ 66.]   Plaintiff also avers that Lewis & Clark breached its duties by "failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers" and "by failing to provide reasonably timely notice of the Data [Incident] to Plaintiff and members of the class[.]"   [*Id.* at ¶ 71.]

28.     The Complaint contains no allegations that would support or suggest the amount in damages Plaintiff or any of the putative class members allegedly sustained as a consequence of Lewis & Clark's negligence.   However, because Plaintiff seeks injunctive relief and has specifically stated both that "PII and PHI disclosures are extremely damaging to consumers'

finances, credit history, and reputation" and that he and the class "will likely have to spend time correcting fraudulent information in their credit reports and continually monitoring their reports for future inaccuracies," among other things, [*id.* at ¶¶ 45, 49; Prayer for Relief(C)], one option for assigning a value to these damages is through the cost of credit monitoring.

29.     Three prominent identity-protection agencies (Equifax, IDShield, and Experian) advertise monthly rates for credit monitoring services ranging from $14.95 to $24.99 per person per month.   For example, IDShield Individual offers one-bureau credit monitoring with an unlimited service guarantee, dark web internet monitoring, data breach notifications, full-service restoration when theft occurs, and 24/7 emergency assistance, among other services, for $14.95 per month for one individual.[5]   Similarly, both Equifax[6] and Experian[7] offer products that provide 3- Bureau credit monitoring with up to $1 million in identity theft insurance for $19.95 and $24.99 a month, respectively.  Multiplying the cost of providing an additional year of credit-monitoring services at $14.95 (the cheapest of the three products) by the approximately 37,846 incident response letters Lewis & Clark mailed to individuals in Illinois, the amount in controversy for just one additional year of credit monitoring is approximately $6,789,572.40 (calculated as 37,846 individuals with Illinois addresses notified of the Data Incident, times 12

---

[5] See *IDShield Plans & Pricing*, https://www.idshield.com/plans-and-pricing (last visited June 1, 2023); *see also IDShield Individual (Illinois)*,
https://checkout.idshield.com/?plan=IDSI&freetrial=true&region=TX (last visited June 1, 2023).
[6] *See Equifax*, https://www.equifax.com/equifax-complete/Equifax/?CID=2_equifax%20credit%20monitoring_G_e&adID=502355994880&DS3_KIDS=p50281164756&campaignid=71700000061086345&sakwid=43700050281164756&gclid=EAIaIQobChMIzpzAneG28wIVS9KzCh3vCA_MEAAYASAAEgIjevD_BwE&gclsrc=aw.ds (last visited June 1, 2023).
[7] *See Experian CreditLock*, https://www.experian.com/consumer-products/creditlock.html?pc=sem_exp_google&cc=sem_exp_google_ad_858684474_45405224126_515795132613_kwd-381685474538_e___k_EAIaIQobChMIwIyw3OCR_wIV8zWtBh1hrQYEEAAYAiAAEgIt-_D_BwE_k_&ref=identity&awsearchcpc=1&gad=1&gclid=EAIaIQobChMIwIyw3OCR_wIV8zWtBh1hrQYEEAAYAiAAEgIt-_D_BwE, (last visited June 1, 2023).

months, times $14.95 per month).  And providing just two additional years of credit-monitoring services at $14.95 (the cheapest of the three products) to all members of the putative class increases the amount in controversy to approximately $13,579,144.80 for credit monitoring alone, far in excess of the CAFA $5,000,000 threshold (calculated as 37,846 individuals with Illinois addresses notified of the Data Incident, times 24 months, times $14.95 per month).

30.     Accordingly, Plaintiff's and the putative class members' potential credit-monitoring damages alone exceed the CAFA $5,000,000 jurisdictional amount.  Combined with their other alleged negligence damages, the total amount in controversy is well in excess of $5,000,000.

31.     <u>Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act</u>. Plaintiff also claims that Lewis & Clark violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1 *et seq.*   [Compl., ¶¶ 95-101.] Plaintiff asserts that Lewis & Clark not only violated the Illinois Personal Information Protection Act ("IPIPA"), 815 Ill. Comp. Stat. 53/20 *et seq.*, but also that Lewis & Clark violated the ICFA by engaging in unfair and deceptive acts or practices in the conduct of trade or commerce.  [*Id.* at ¶ 96.]

32.     Plaintiff claims that Lewis & Clark violated the ICFA vis-à-vis the IPIPA by "failing to implement and maintain reasonable security measures to protect Plaintiff and Class's PHI and PII."  [*Id.* at ¶ 99.]  As a result of Lewis & Clark's purported ICFA and IPIPA violations, Plaintiff claims that he and class members have suffered actual damages.  [*Id.* at ¶ 101.]

33.     Although Plaintiff's Complaint contains no allegations that would support or suggest the amount in controversy damages he or any of the putative class allegedly sustained as

a result of Lewis & Clark's alleged violations of the ICFA and IPIPA, the ICFA allows for a recovery of "actual damages" suffered as a result of the ICFA violation.  815 Ill. Comp. Stat. 505/10a(a).  The ICFA also allows for potential recovery of punitive damages, injunctive relief, and attorneys' fees.  *Id.*  Thus, assuming these damages amounts are included in the amount in controversy, the amount in controversy would far exceed the CAFA $5,000,000 threshold.

34.   <u>Prayer for Other Monetary and Injunctive Relief</u>.   Plaintiff also prays for additional monetary relief, including punitive damages, as well as injunctive and equitable relief. [Compl., Prayer for Relief.]   Specifically, Plaintiff requests "declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the class," [*id.* at Prayer for Relief(B)]; "injunctive relief as is necessary to protect the interests of Plaintiff and the Class," [*id.* at Prayer for Relief(C)]; injunctive relief to "enjoin[] Lewis and Clark from further deceptive and unfair practices . . .," [*id.* at Prayer for Relief(D)]; and "compensatory, exemplary, punitives damages, and statutory damages, including pre- and post-judgment interest," [*id.* at Prayer for Relief(E)].

35.   First, courts in the Seventh Circuit have found requests for punitive damages should be included in the amount-in-controversy calculation even where not explicitly requested. *See Schutte*, 28 F.4th at 855 ("[I]t is well-settled that punitive damages . . . 'factor into the amount-in-controversy calculation.'") (citation omitted); *Roppo*, 869 F.3d at 582 ("Ms. Roppo also seeks punitive damages, which factor into the amount-in-controversy calculation.").   And here, punitive damages are available under the ICFA and are also potentially available for Plaintiff's negligence claim because Plaintiff asserts that Lewis & Clark "acted with wanton and reckless disregard" with respect to Plaintiff's and the putative class's PII.  [Compl., ¶ 66.]; *see, e.g.*, *Turner v. GAC Star Quality, LLC*, No. 21 C 5867, 2023 WL 3226196, at *2 n.2 (N.D. Ill.

May 3, 2023) (stating that the availability of punitive damages under the ICFA and potentially for plaintiffs' claims "assure[d] the Court of its subject-matter jurisdiction" as the amount-in-controversy requirement was clearly met) (citing 815 Ill. Comp. Stat. 505/10a(a) (punitive damages available under the ICFA) & *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812-13 (7th Cir. 2017) (under Illinois law, punitive damages are available for tort claims upon a showing of gross negligence or wanton conduct)).

36.     Accordingly, although no allegations in the Complaint allow Lewis & Clark to determine with specificity the amount of punitive damages the Court would potentially award, Lewis & Clark underscores these allegations to the Court as further evidence that the amount-in-controversy far exceeds the $5,000,000 CAFA threshold.

37.     Second, "[i]n actions seeking declaratory or injunctive relief, it is 'well established that the amount in controversy is measured by the value of the object of the litigation.'"  *Golin v. Neptune Mgmt. Corp.*, 704 F. App'x 591, 595 (7th Cir. 2017) (quoting *Hunter v. Wash. St. Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)).  In the Seventh Circuit, "that value may be calculated by measuring the benefit to the plaintiff *or* the detriment to the defendant[.]"  *Id.* (citing *Macken ex rel. Macken*, 333 F.3d at 799-800 (7th Cir. 2003)).

38.     In determining the "value of the object of the litigation," courts in the Seventh Circuit apply the "either viewpoint rule," which provides that the value of injunctive or declaratory relief must be estimated from either the plaintiff's or defendant's viewpoint. *Lambert v. Hughes Network Sys., LLC*, No. 10–cv–0571, 2010 WL 3034212, at *2 (N.D. Ill. Aug. 2, 2010).   Under this rule, Seventh Circuit Courts must determine the amount in controversy for purposes of injunctive relief by how much it will "cost to comply[] with an injunction."  *Id.*  Further, in class actions removed under CAFA, the Court may aggregate each

class member's claims for injunctive relief (and respective damages) to determine whether the aggregate cost to the defendant of complying with any injunctive relief requested exceeds the amount in controversy threshold. *See, e.g.*, *Pappas v. Auto Club Ins. Ass'n*, No. 20 CV 4205, 2021 WL 7179123, at *1 (N.D. Ill. Jan. 12, 2021) (assessing "likelihood of cost to defendant from an injunction" to calculate amount in controversy).

39.     Applied here, any potential recovery to Plaintiff, including injunctive and equitable relief as necessary to protect the interests of Plaintiff and the putative class, to the extent such relief exists, combined with the other damages alleged in the Complaint, underscores that the amount in controversy is greater than $5,000,000.

40.     From the "viewpoint" of Lewis & Clark, the aggregate cost to Lewis & Clark of complying with Plaintiff's request for relief to "enjoin[] Lewis and Clark from further deceptive and unfair practices . . ." [Compl., Prayer for Relief(D)], would potentially involve overhauling Lewis & Clark's state and federal regulatory privacy and cyber security policies, implementing new training procedures, and potentially hiring outside auditors and third-party forensic firms to conduct testing and reviews of Lewis & Clark's systems, network, and relevant policies in order to try to make itself invulnerable to a future data incident.  The cost of modifying Lewis & Clark's privacy and cyber security policies in order to do so could also include instituting new training and hiring outside vendors.  Together with the other injunctive and other monetary relief requested, and combined with the other damages alleged in the Complaint, the cost to comply with Plaintiff's injunctive relief request further underscores that the amount in controversy is greater than $5,000,000. *See, e.g.*, *Lokey v. CVS Pharmacy, Inc.*, Case No. 20-cv-04782-LB, 2020 WL 5569705, at *5 (N.D. Cal. Sept. 17, 2020) (agreeing with defendant's assessment that the cost of complying with plaintiff's requested injunctive relief was "at least $3,888,363," when

16

compliance potentially entailed "overhauling [the product at issue] in some way," including by "removing the product from shelves and warehouses, destroying existing inventory, developing new packaging, replenishing the inventory, and changing the product's marketing and advertising scheme" and therefore finding the injunctive relief costs, considered with the other damages alleged in the complaint, exceeded the $5 million CAFA threshold).

41.     Other Claims.  In addition to the claims and related damages discussed above, Plaintiff also asserts claims for (1) breach of implied contract, [Compl., ¶¶ 73-87] and (2) unjust enrichment, [*id.* at ¶¶ 88-84].  Plaintiff alleges that he and the class have suffered or will suffer damages "because of Defendant's breaches of its agreements, including breaches . . . through violations of the covenant of good faith and fair dealing," [*id.* at ¶ 87], and "actual damages in an amount equal to the difference in the value between their purchases made with reasonable data privacy and security practices and procedures that Plaintiff and members of the class paid for, and those purchases without unreasonable data privacy and security practice and procedures they received," [*id.* at ¶ 92].  As a result, Plaintiff seeks compensation for these alleged injuries and requests that Lewis & Clark "be compelled to disgorge into a common fund to benefit Plaintiff and members of the class all unlawful or inequitable proceeds received by it as a result of the conduct and Data [Incident] alleged [in the Complaint]."  [*Id.* at ¶ 94; Prayer for Relief.]

42.     No allegation in the Complaint allow Lewis & Clark to calculate with specificity the amount of these alleged damages and relief.  However, Lewis & Clark underscores these allegations to the Court as further evidence that the amount in controversy exceeds $5,000,000, as already established above.

**ATTORNEYS' FEES**

43.     When the underlying substantive law provides for an award of attorneys' fees, a party may include that amount in its calculation of the amount in controversy.  *De Falco v. Vibram USA, Inc.*, No. 12 C 7238, 2013 WL 1122825, at * 4 (N.D. Ill. Mar. 18, 2013); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 512 (7th Cir. 2006).  The Court may also consider reasonable estimates of attorneys' fees when analyzing disputes over the amount in controversy.  *See Nieto v. Perdue Farms, Inc.*, No. 08–07399, 2010 WL 1031691, at *2 (N.D. Ill. Mar. 17, 2010) ("[G]iven the large number of plaintiffs, and that the [ICFA] permits recovery of punitive damages and attorney's fees, it is plausible that the amount in controversy will exceed $5,000,000.").

44.     Plaintiff here has sought attorneys' fees "as allowed by law."  [Compl,, Prayer for Relief(G).]  Because Plaintiff states a claim for violation of the ICFA, and attorneys' fees may be awarded by the Court in its discretion for a violation of the ICFA, *see United States v. Fischer Excavating, Inc.*, Case No. 4:12-cv-04082-JEH, 2017 WL 3971091, at *8 n.7 (C.D. Ill. Sept. 8, 2017) ("Attorneys' fees may be awarded to the prevailing party under section 10a(c) of the [ICFA].") (quoting 815 Ill. Comp. Stat. 505/10a(c) (""[I]n any action brought by a person under this Section, the Court may grant injunctive relief where appropriate and may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party."))), attorneys' fees should be included in the amount in controversy calculation.

45.     In the Seventh Circuit, an approximate 33% fee award is typical in class actions. *Teamsters Local Union No. 604 v. Inter-Rail Transp., Inc.*, No. 02-CV-1109-DRH, 2004 WL 768658, at *1 (S.D. Ill. Mar. 19, 2004); *see also In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1033 (N.D. Ill 2000) (recognizing established 30% benchmark for an award of

fees in class actions).   Using this benchmark, attorneys' fees, when added to the amounts discussed above, further increases the amount in controversy for alleged exposure above the jurisdictional minimal for removal.  *See McGoveran v. Amazon Web Servs., Inc.*, 488 F. Supp. 3d 714, 718 (S.D. Ill. 2020) ("Even assuming a class size of only 1,000, the Complaint alleges damages of at least $5,000,000.   And when considering attorneys' fees and potential statutory damages . . . the amount in controversy well exceeds the required threshold.").

46.     Accordingly, because this case was pled as a class action, and because minimal diversity, class size, and the amount in controversy requirements of CAFA are satisfied, Lewis & Clark has properly removed the State Court Action to this Court.

47.     Indeed, based on the above, there is no "legal certainty" that Plaintiffs could not recover an aggregate amount exceeding $5,000,000 required for CAFA removal.  *See* 28 U.S.C. § 1332(d)(6); *Schutte*, 28 F.4th at 858 ("Once the proponent of jurisdiction has set out the amount in controversy, only a 'legal certainty' that the judgment will be less forecloses federal jurisdiction.") (quoting *Brill*, 427 F.3d at 448); *Blomberg*, 639 F.3d at 764 ("Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5,000,000, the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much.") (citations omitted).  Accordingly, Lewis & Clark has properly removed the State Court Action to this Court.[8]

---

[8] The party opposing removal jurisdiction has the burden of proving that a discretionary or mandatory exception under CAFA applies.  *Bond v. Veolia Water Indianapolis, LLC*, 571 F. Supp. 2d 905, 908 (S.D. Ind. 2008) ("Under CAFA, the burden is on plaintiffs to show that one or more exceptions apply.") (citing *Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 680 (7th Cir. 2006)).  This Notice of Removal does not address, nor concede, any issues related to the CAFA jurisdiction exceptions.

## NOTICE

48.     As required by 28 U.S.C. § 1446(d), Lewis & Clark is providing written notice of the filing of this Notice of Removal to Plaintiff and is filing a copy of this Notice of Removal with the Clerk of the Third Judicial Circuit Court for Madison County, Illinois.

WHEREFORE, Defendant Lewis and Clark Community College removes the above-captioned action, now pending in the Circuit Court of Madison County, Illinois, to the United States District Court for the Southern District of Illinois, East St. Louis Division.

Dated: June 2, 2023                    **BAKER & HOSTETLER LLP**

By: /s/ Amy L. Lenz
Amy L. Lenz
alenz@bakerlaw.com
One North Wacker Drive, Suite 4500
Chicago, Illinois  60606
Telephone: (312) 416-6200

Matthew D. Pearson (*pro hac vice* forthcoming)
mpearson@bakerlaw.com
600 Anton Boulevard, Suite 900
Costa Mesa, CA  92626
Telephone: (714) 754-6600

Sarah A. Ballard (*pro hac vice* forthcoming)
sballard@bakerlaw.com
1801 California Street, Suite 4400
Denver, CO  80202
Telephone: (303) 861-0600

*Counsel for Defendant Lewis and Clark Community College*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that she caused a true copy of the foregoing

**Notice of Removal** to be served on counsel of record via email on June 2, 2023:


Christopher W. Byron
Christopher J. Petri
Brian R. Kalb
BYRON CARLSON PETRI & KALB, LLC
411 St. Louis Street
Edwardsville, Illinois 62025
cwb@bcpklaw.com
cjp@bcpklaw.com
brk@bcpklaw.com

Christopher E. Roberts
David T. Butsch
BUTSCH ROBERTS & ASSOCIATES LLC
231 S. Bemiston Avenue, Suite 260
Clayton, MO 63105
butsch@butschroberts.com
croberts@butschroberts.com


/s/ *Amy L. Lenz*

# EXHIBIT A

***EFILED***
Case Number 2023LA000615
Date: 4/20/2023 3:41 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT**
**THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

| | |
|---|---|
| DENNIS LANCASTER, individually and on behalf of all others similarly situated, ) | |
| ) | **2023LA000615** |
| Plaintiff, ) | Case No. |
| ) | |
| vs. ) | CLASS ACTION |
| ) | |
| LEWIS AND CLARK COMMUNITY ) COLLEGE, | DEMAND FOR JURY TRIAL |
| ) | |
| Defendant. ) | |

## CLASS ACTION COMPLAINT

Plaintiff Dennis Lancaster ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant, Lewis and Clark Community College ("Lewis and Clark" or "Defendant"), and states:

### INTRODUCTION

1.    Lewis and Clark, a university, lost control over current and former students and employees' highly sensitive personal and medical information to cybercriminals in a security breach ("Data Breach") and then concealed the breach from them for many months. The Data Breach's victims include thousands of persons, who disclosed their highly sensitive medical and personal information to Lewis and Clark, expecting that Lewis and Clark would safeguard it and timely warn them of security breaches. Lewis and Clark violated those duties and Illinois law. Plaintiff is a Data Breach victim and brings this class action on behalf of all persons harmed by Lewis and Clark's misconduct.

2.    Lewis and Clark obtains Personal Health Information and Personally Identifying

Information ("PHI" and "PII") from Plaintiff and the putative class members in exchange for providing educational services and/or employment.

3.      In November 2021, Lewis & Clark "experienced a ransomware incident." Lewis & Clark, for the following five months did not disclose that hackers had breached its systems, choosing instead to "investigate" the breach internally.

4.      On April 21, 2022, Lewis & Clark first sent a letter to Plaintiff and the putative class members, alerting them of the ransomware incident, and that certain information had been compromised.

5.      Plaintiff received the letter from Lewis & Clark on or about April 28, 2022.

6.      On information and belief, cybercriminals were able to easily bypass Lewis and Clark's systems by using an administrative account, giving them high-level access to Lewis & Clark's files and wide-ranging data.

7.      On information and belief, Lewis and Clark violates industry-standard medical records retention policies by storing sensitive PII and PHI in several locations, leaving the data protected in some systems but an unguarded target in others. Lewis and Clark's systems were inadequate and unable to prevent, detect, and stop the unauthorized hack before cybercriminal's pilfered its data.

8.      In March 2022, Lewis and Clark's "investigation" revealed that cybercriminals had not only accessed administrative files and "folders containing certain data," but had, in fact, accessed vast amounts of PHI and PII, including: addresses, dates of birth, driver's license number and other forms of other government issued identification, facial photographs, account numbers and security codes, health insurance information, medical information, passport numbers, social security numbers and student identification numbers.

9.      On learning of this disturbing breach, Lewis and Clark failed to immediately warn Plaintiff and the putative class members that it lost control over PHI and PII, inexplicably waiting multiple months to notify them.

10.     Lewis and Clark's failures to protect  sensitive PHI and PII and warn Plaintiff and the putative class members promptly and fully about the data breach violates Illinois law and harms thousands of persons, causing Plaintiff to seek relief on a class wide basis.

## PARTIES

11.     Plaintiff is an individual who resides in Edwardsville, Illinois. Lancaster is a former student of Lewis and Clark who provided personal data to Lewis and Clark.

12.     Lewis and Clark is a college with locations in Edwardsville, Godfrey and East Alton, Illinois.

## JURISDICTION AND VENUE

13.     This Court has subject-matter jurisdiction over this class action lawsuit because it arises under Illinois law.

14.     This Court has personal jurisdiction over Lewis and Clark under 735 ILCS5/2-209 because Plaintiff's claims arise out of and relate to Lewis and Clark's conduct in Illinois.

15.     Venue is proper in this Court under 735 ILCS 5/2-101(2) because the transactions or some part thereof out of which the cause of action arouse occurred in Madison County.

## FACTUAL BACKGROUND

16.     Lewis and Clark is a community college with multiple locations in Illinois.

17.     Lewis and Clark obtained PHI and PII from employees and persons who attend its schools.

18.     As part of its services, Lewis and Clark requires that consumers disclose their PII

and PHI, including their addresses, dates of birth, driver's license number and other forms of other government issued identification, facial photographs, certain account numbers and security codes, health insurance information, medical information, passport numbers, social security numbers and student identification numbers.

19.     In exchange for this information, Lewis and Clark promises to safeguard Plaintiff's and the putative class members' PHI and PII and has a variety of privacy notices that agree to protect PHI and PII.

## Lewis and Clark Fails to Safeguard PHI and PII

20.     Plaintiff and the proposed Class are current Lewis and Clark students and/or employees.

21.     As a condition to providing educational services and/or employment, Lewis and Clark required Plaintiff and the putative class members to provide their PII and PHI.

22.     Lewis and Clark then collected and maintained their PII and PHI in its computer systems.

23.     On information and belief, Lewis and Clark does not adequately train its employees on security protocols to securely maintain their credentials and access information.

24.     On information and belief, Lewis and Clark became aware in November 2021 that cybercriminals attacked and infiltrated Lewis and Clark's systems, compromising PII and PHI of Plaintiff and the putative class members.

25.     On information and belief, Lewis and Clark did not have adequate security protocols to prevent, detect, and stop the cybercriminals from accessing the PII and PHI of Plaintiff and the putative class members.

26.     Lewis and Clark did not immediately inform Plaintiff and the putative class

members about the Data Breach. Instead, Lewis and Clark continued its "investigation" for numerous months, inexplicably dragging it out while Plaintiff and the putative class members were unaware that cybercriminals had accessed their highly sensitive PII and PHI.

27.     In March 2022, following its investigation, Lewis and Clark learned that hackers had, in fact, accessed a vast trove of PII and PHI. Lewis and Clark sent notices to Plaintiff and the putative class members one month later, on April 21, 2022 that the data discussed above was potentially compromised ("the Notice").

28.     The Notice did not explain who breached Lewis and Clark's systems, how the Data Breach occurred, how Lewis and Clark learned about the breach, or why Lewis and Clark took months to notify Plaintiff and the putative class members that their highly sensitive PII and PHI had been potentially accessed by cybercriminals.

29.     The Notice then explained what Lewis and Clark was purportedly doing to prevent future breaches - all of which should have been in place before the Data Breach.

30.     As a result of the Data Breach, Lewis and Clark's victims face a lifetime risk of identity theft, as it includes sensitive information that cannot be changed, like their dates of birth and Social Security numbers. Despite this lifetime risk, Lewis and Clark offered its victims only 12 months of identity theft protection services.

31.     On information and belief, Lewis and Clark failed to adequately train its employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over Plaintiff's and the putative class members' PII and PHI. Lewis and Clark's negligence is evidenced by its failure to recognize the Data Breach until cybercriminals had already accessed sensitive data, meaning Lewis and Clark had no effective means to detect and prevent attempted data breaches. Moreover, Lewis and Clark should have had adequate security protocols

in place before the Data Breach.

32.     Plaintiff was disturbed by the Data Breach's nature and the thought of cybercriminals accessing his highly sensitive PHI and PII. He was also outraged that Lewis and Clark had taken many months to tell him about the Data Breach, without explaining its delay or why it refused to disclose the breach months after it knew his information may have been compromised.

33.     Plaintiff has spent considerable time and effort monitoring his accounts to protect himself from additional identity theft. Plaintiff fears for his personal financial security and uncertainty over what information was revealed in the Data Breach. He is experiencing feelings of anxiety, sleep disruption, stress, and fear because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that is contemplated and addressed by law.

34.     Further, Plaintiff is unsure what has happened to his PHI and PII as Lewis and Clark has been unwilling to disclose the true nature of the Data Breach, despite Plaintiff's requests.

### Plaintiff and the Proposed Class Face Significant Risk of Identity Theft

35.     Plaintiff and members of the proposed Class have suffered injury from the misuse of their PHI and PII that can be directly traced to Lewis and Clark.

36.     The ramifications of Lewis and Clark's failure to keep Plaintiff's and the putative class members' PHI and PII secure are severe. Identity theft occurs when someone uses another's personal and financial information such as that person's name, account number, Social Security number, driver's license number, date of birth, or other information, without permission, to commit fraud or other crimes.

37.     According to experts, one out of four data breach notification recipients become a victim of identity fraud.

38.     Because Lewis and Clark failed to prevent the Data Breach, Plaintiff and the putative class members have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering: (a) The loss of the opportunity to control how their PII and PHI are used; (b) The diminution in value of their PII and PHI; (c) The compromise and continuing publication of their PHI and PII; (d) Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud; (e) Lost opportunity costs and lost wages associated with the time and effort expended addressing and trying to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud; (f) Unauthorized use of stolen PII and PHI; and, the continued risk to their PHI and PII, which remains in the possession of Lewis and Clark and is subject to further breaches so long as Lewis and Clark fails to undertake the appropriate measures to protect the PII and PHI in their possession.

39.     Stolen PII and PHI is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PHI can be worth up to $1,000.00 depending on the type of information obtained.

40.     The value of Plaintiff's and the putative class members' PII and PHI on the black market is considerable. Stolen PII and PHI trades on the black market for years, and criminals often post stolen private information openly on various "dark web" internet websites, making the information publicly available, for a fee.

41.     It can take victims years to spot identity or PII and PHI theft, giving criminals time to sell that information for cash.

42.     According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses that year, leading to more than $3.5 billion in losses to individuals and business victims.

43.     Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good." Lewis and Clark did not rapidly report to Plaintiff, the Class that their PHI and/or PII had been compromised.

44.     Victims of identity theft also often suffer embarrassment, blackmail, or harassment in person or online, and experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

45.     Along with out-of-pocket expenses that can exceed thousands of dollars for the victim of new account identity theft, and the emotional toll identity theft can take, some victims must spend a considerable time repairing the damage caused by the theft of their PII and PHI. Victims of new account identity theft will likely have to spend time correcting fraudulent information in their credit reports and continually monitor their reports for future inaccuracies, close existing bank/credit accounts, open new ones, and dispute charges with creditors.

46.     Further complicating the issues faced by victims of identity theft, data thieves may wait years before trying to use the stolen PII and PHI. To protect themselves, Plaintiff and the putative class members will need to remain vigilant against unauthorized data use for years or even decades to come.

47.     The Federal Trade Commission ("FTC") has also recognized that consumer data is a new and valuable form of currency. In an FTC roundtable presentation, former Commissioner,

Pamela Jones Harbour, stated that "most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency."

48.       The FTC has also issued several guidelines for businesses that highlight reasonable data security practices. The FTC has noted the need to factor data security into all business decision-making. According to the FTC, data security requires: (1) encrypting information stored on computer networks; (2) retaining payment card information only as long as necessary; (3) properly disposing of personal information that is no longer needed; (4) limiting administrative access to business systems; (5) using industry-tested and accepted methods for securing data; (6) monitoring activity on networks to uncover unapproved activity; (7) verifying that privacy and security features function properly; (8) testing for common vulnerabilities; and (9) updating and patching third-party software.

49.       According to the FTC, unauthorized PII and PHI disclosures are extremely damaging to consumers' finances, credit history, and reputation, and can take time, money, and patience to resolve the fallout. The FTC treats the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5(a) of the FTC Act.

50.       To that end, the FTC has issued orders against businesses that failed to employ reasonable measures to secure sensitive payment card data. See In the matter of Lookout Services, Inc., No. C-4326, ¶ 7 (June 15, 2011) ("[Defendant] allowed users to bypass authentication procedures" and "failed to employ sufficient measures to detect and prevent unauthorized access to computer networks, such as employing an intrusion detection system and monitoring system logs."); In the matter of DSW, Inc., No. C-4157, ¶ 7 (Mar. 7, 2006) ("[Defendant] failed to employ

sufficient measures to detect unauthorized access."); In the matter of The TJX Cos., Inc., No. C-4227 (Jul. 29, 2008) ("[R]espondent stored . . . personal information obtained to verify checks and process unreceipted returns in clear text on its in-store and corporate networks[,]" "did not require network administrators . . . to use different passwords to access different programs, computers, and networks[,]" and "failed to employ sufficient measures to detect and prevent unauthorized access to computer networks . . ."); In the matter of Dave & Buster's Inc., No. C-4291 (May 20, 2010) ("[Defendant] failed to monitor and filter outbound traffic from its networks to identify and block export of sensitive personal information without authorization" and "failed to use readily available security measures to limit access between instore networks . . ."). These orders, which all preceded the Data Breach, further clarify the measures businesses must take to meet their data security obligations.

## CLASS ACTION ALLEGATIONS

51.     Plaintiff brings this action on behalf of class of all other persons or entities similarly situated in the state of Illinois (the "Class").

52.     The Class of persons Plaintiff proposes to represent are tentatively defined as: All individuals residing in Illinois whose PII and/or PHI was compromised in the Data Breach disclosed by Lewis and Clark on or about April 21 2022.

53.     Excluded from the Class are counsel, Lewis and Clark, any entities in which Lewis and Clark has a controlling interest, Lewis and Clark's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

54.     The Class defined above is identifiable through Lewis and Clark's business records.

55.     There are thousands of potential Class members.

56.     Individual joinder of these persons is impracticable.

57.     Plaintiff is a member of the Class.

58.     There are questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

a.      Whether Lewis and Clark had a duty to use reasonable care in safeguarding Plaintiff and the putative class members' PII and PHI;

b.      Whether Lewis and Clark failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c.      Whether Lewis and Clark was negligent in maintaining, protecting, and securing PII and PHI;

d.      Whether Lewis and Clark breached contract promises to safeguard Plaintiff and the putative class members' PII and PHI;

e.      Whether Lewis and Clark took reasonable measures to determine the extent of the Data Breach after discovering it;

f.      Whether Lewis and Clark's Breach Notice was reasonable;

g.      Whether the Data Breach caused Plaintiff and the putative class members' injuries;

h.      What the proper damages measure is;

i.      Whether Lewis and Clark violated the statutes alleged in this complaint; and,

j.      Whether Plaintiff and the putative class members are entitled to damages, treble damages, or injunctive relief.

59.     Plaintiff's claims are typical of the claims of the putative class members.

60.     Plaintiff is an adequate representative of the Class because his interests do not

conflict with the interests of the Class, he will fairly and adequately protect the interests of the Class, and he is represented by counsel skilled and experienced in class actions.

61.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of putative class members, which will be ascertainable from records maintained by Lewis and Clark.

62.     The likelihood that individual members of the putative class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

63.     Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

### FIRST CLAIM FOR RELIEF
### Negligence
### (On Behalf of Plaintiff and the Class)

64.     Plaintiff incorporates all previous paragraphs as if fully set forth below.

65.     Plaintiff and members of the Class entrusted their PII and PHI to Lewis and Clark. Lewis and Clark owed to Plaintiff and other members of the putative class a duty to exercise reasonable care in handling and using the PII and PHI in its care and custody, including implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that came to pass, and to promptly detect attempts at unauthorized access.

66.     Lewis and Clark owed a duty of care to Plaintiff and members of the Class because it was foreseeable that Defendant's failure to adequately safeguard their PII and PHI in accordance with state-of-the-art industry standards for data security would result in the compromise of that PII and PHI—just like the Data Breach that ultimately came to pass. Defendant acted with wanton and

reckless disregard for the security and confidentiality of Plaintiff's and members of the class's PII and PHI by disclosing and providing access to this information to third parties and by failing to properly supervise both the way the PII and PHI was stored, used, and exchanged, and those in its employ who made that happen.

67. Defendant owed to Plaintiff and members of the class a duty to notify them within a reasonable time frame of any breach to the security of their PII and PHI. Defendant also owed a duty to timely and accurately disclose to Plaintiff and members of the Class the scope, nature, and occurrence of the Data Breach. This duty is required and necessary for Plaintiff and members of the class to take appropriate measures to protect their PII and PHI, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

68. Defendant owed these duties to Plaintiff and members of the class because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security protocols. Defendant actively sought and obtained Plaintiff's and members of the class's PII and PHI for medical treatment services. Plaintiff and members of the class needed to provide their PII and PHI to Defendant to receive medical treatment and services from Defendant, and Defendant retained that information.

69. The risk that unauthorized persons would try to gain access to the PII and PHI and misuse it was foreseeable. Given that Defendant holds vast amounts of PII and PHI, it was inevitable that unauthorized individuals would try to access Defendant's databases containing the PII and PHI—whether by malware or otherwise.

70. PII and PHI is highly valuable, and Defendant knew, or should have known, the

risk in obtaining, using, handling, emailing, and storing the PII and PHI of Plaintiff and members of the class and the importance of exercising reasonable care in handling it.

71.    Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and PII and PHI of Plaintiff and members of the class which actually and proximately caused the Data Breach and Plaintiff's and members of the class's injury. Defendant also breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and members of the class, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff's and members of the class's injuries-in-fact. As a direct and traceable result of Defendant's negligence or negligent supervision, Plaintiff, and members of the class have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

72.    Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff's and members of the class's actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII and PHI by criminals, improper disclosure of their PII and PHI, lost benefit of their bargain, lost value of their PII and PHI, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

### SECOND CLAIM FOR RELIEF
### Breach of Implied Contract
### (On Behalf of Plaintiff and the Class)

73.    Plaintiff incorporates all previous paragraphs as if fully set forth below.

74.    Defendant offered to provide goods and services to Plaintiff and members of the

class in exchange for payment.

75.     Defendant also required Plaintiff and the members of the class to provide Defendant with their PII and PHI to receive services.

76.     In turn, and through the Notice of Privacy Practices, Defendant agreed it would not disclose the PHI it collects to unauthorized persons. Defendant also impliedly promised to maintain safeguards to protect Plaintiff's and the putative class members' PII and PHI.

77.     Plaintiff and the members of the class accepted Defendant's offer by providing PII and PHI to Defendant in exchange for receiving Defendant's goods and services and then by paying for and receiving the same.

78.     Implicit in the parties' agreement was that Defendant would provide Plaintiff and members of the class with prompt and adequate notice of all unauthorized access or theft of their PII and PHI.

79.     Plaintiff and the members of the class would not have entrusted their PII and PHI to Defendant without such agreement with Defendant.

80.     Defendant materially breached the contract(s) it had entered with Plaintiff and members of the class by failing to safeguard such information and failing to notify them promptly of the intrusion into its computer systems that compromised such information. Defendant also breached the implied contracts with Plaintiff and members of the class by (a) Failing to properly safeguard and protect Plaintiff's and members of the class's PII and PHI; (b) Violating industry standards as well as legal obligations that are necessarily incorporated into the parties' agreement; (c) Failing to ensure the confidentiality and integrity of electronic PII and PHI that Defendant created, received, maintained, and transmitted in violation of 45 C.F.R. § 164.306(a)(1).

81.     The damages sustained by Plaintiff and members of the class as described above

were the direct and proximate result of Defendant's material breaches of its agreement(s).

82.     Plaintiff and members of the class have performed under the relevant agreements, or such performance was waived by the conduct of Defendant.

83.     The convent of good faith and fair dealing is an element of every contract. All such contracts impose on each party a duty of good faith and fair dealing. The parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract along with its form.

84.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.

85.     Defendant failed to advise Plaintiff and members of the class of the Data Breach promptly and sufficiently.

86.     In these and other ways, Defendant violated its duty of good faith and fair dealing.

87.     Plaintiff and members of the class have sustained damages because of Defendant's breaches of its agreement, including breaches of it through violations of the covenant of good faith and fair dealing.

### THIRD CAUSE OF ACTION
### Unjust Enrichment
### (On Behalf of the Plaintiff and the Class)

88.     Plaintiff incorporates all previous paragraphs as if fully set forth below.

89.     This claim is plead in the alternative to the breach of contract claim.

90.     Plaintiff and members of the class conferred a monetary benefit upon Defendant in

the form of monies paid for treatment services.

91.     Defendant appreciated or knew about the benefits conferred upon itself by Plaintiff and members of the class. Defendant also benefited from the receipt of Plaintiff's and members of the Class's PII and PHI, as this was used to facilitate payment for Defendant's services.

92.     As a result of Defendant's conduct, Plaintiff, and members of the class suffered actual damages in an amount equal to the difference in value between their purchases made with reasonable data privacy and security practices and procedures that Plaintiff and members of the class paid for, and those purchases without unreasonable data privacy and security practices and procedures that they received.

93.     Under principals of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and members of the class because Defendant failed to implement (or adequately implement) the data privacy and security practices and procedures for itself that Plaintiff and members of the class paid for and that were otherwise mandated by federal, state, and local laws and industry standards.

94.     Defendant should be compelled to disgorge into a common fund to benefit Plaintiff and members of the class all unlawful or inequitable proceeds received by it as a result of the conduct and Data Breach alleged here.

## FOURTH CLAIM FOR RELIEF
### Violation of Illinois Consumer Fraud and Deceptive Business Practices Act
### 815 Ill. Comp. Stat. 505/1 *et seq.*
### (On Behalf of the Plaintiff and the Class)

95.     Plaintiff incorporates all previous paragraphs as if fully set forth below.

96.     The Illinois Personal Information Protection Act ("IPIPA"), 815 ILCS 530/20 provides that a violation of that statute constitutes an unlawful practice under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("ICFA"), which prohibits

unfair and deceptive acts or practices in the conduct of trade and commerce.

97.     Defendant is a "data collector" under IPIPA. As a data collector, Defendant owns or licenses information concerning Illinois residents.

98.     The IPIPA requires a data collector that "maintains or stores... records that contain personal information concerning an Illinois resident shall implement and maintain reasonable security measures to protect those records from unauthorized access, acquisition, ... use, ... or disclosure." IPIPA, 815 Ill. Comp. Stat. 530/45(a).

99.     The IPIPA further requires that data collectors to "notify the resident at no charge that there has been a breach of the security of the system data following discovery or notification of the breach. The disclosure notification shall be made in the most *expedient* time possible and *without unreasonable delay*, consistent with any measures necessary to determine the scope of the breach and restore the reasonable integrity, security, and confidentiality of the data system." (emphasis added).

100.    As alleged above, Defendant violated the IPIPA by failing to implement and maintain reasonable security measures to protect Plaintiff and the Class's PHI and PII. Defendant further violated the IPIPA by failing to give Plaintiff and the Class expedient notice without unreasonable delay.

101.    As a direct and proximate cause of Defendant's failures, Plaintiff and the Class have suffered actual damages.

## PRAYER FOR RELIEF

Plaintiff and members of the Class demand a jury trial on all claims so triable and request that the Court enter an order:

A.   Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing him counsel to represent the Class;

B.   Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class;

C.   Awarding injunctive relief as is necessary to protect the interests of Plaintiff and the Class;

D.   Enjoining Lewis and Clark from further deceptive and unfair practices and making untrue statements about the Data Breach and the stolen PHI and PII;

E.   Awarding Plaintiff and the Class damages that include compensatory, exemplary, punitive damages, and statutory damages, including pre- and post-judgment interest, in an amount to be proven at trial;

F.   Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G.   Awarding attorneys' fees and costs, as allowed by law;

H.   Awarding prejudgment and post-judgment interest, as provided by law;

I.   Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J.   Granting such other or further relief as may be appropriate under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this 20th day of April, 2023.

BYRON CARLSON PETRI & KALB, LLC

By:    */s/ Christopher W. Byron*
           Christopher W. Byron, #6230810
           Christopher J. Petri, #6257456
           Brian R. Kalb, #6275228
           411 St. Louis Street
           Edwardsville, Illinois 62025
           Tel: (618) 655.0600
           Fax: (618) 655.4004
           cwb@bcpklaw.com
           cjp@bcpklaw.com
           brk@bcpklaw.com

           and

           Christopher E. Roberts #6302857
           David T. Butsch #6205434
           Butsch Roberts & Associates LLC
           231 S. Bemiston Ave., Suite 260
           Clayton, MO  63105
           Tel: (314) 863-5700
           Fax: (314) 863-5711
           butsch@butschroberts.com
           croberts@butschroberts.com

           ***Attorneys for Plaintiff and***
           ***Putative Class Representative***

***EFILED***
Case Number 2023LA000615
Date: 4/20/2023 3:41 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT**
**THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

DENNIS LANCASTER, individually )
and on behalf of all others similarly situated,)
)
      Plaintiff, )
)
vs. )
)
LEWIS AND CLARK COMMUNITY )
COLLEGE, )
)
      Defendant. )

**2023LA000615**

Case No.

CLASS ACTION

DEMAND FOR JURY TRIAL

## ENTRY OF APPEARANCE

COMES NOW Christopher W. Byron and Christopher J. Petri of Byron Carlson Petri &

Kalb, LLC and hereby enter his appearance as on behalf of Plaintiffs, Dennis Lancaster,

individually and on behalf of all other similarly situated.

Dated:  April 20, 2023

Dennis Lancaster, individually and on behalf of all
others similarly situated,

*/s/ Christopher W. Byron*
Christopher W. Byron, #6230810
Christopher J. Petri, #6257456
Byron Carlson Petri & Kalb, LLC
411 St. Louis Street
Edwardsville, Illinois 62025
Phone: (618) 655-0600
Fax: (618) 655-4004
cwb@bcpldaw.com
cjp@bcpldaw.com

***Attorneys for Plaintiff and***
***Putative Class Representative***

***EFILED***
Case Number 2023LA000615
Date: 4/20/2023 3:41 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT**
**THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

| | |
|---|---|
| DENNIS LANCASTER, individually and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) | Case No. **2023LA000615** |
| ) | |
| vs. ) | CLASS ACTION |
| ) | |
| LEWIS AND CLARK COMMUNITY ) COLLEGE, ) ) | DEMAND FOR JURY TRIAL |
| Defendant. ) | |

### JURY DEMAND

COMES NOW Plaintiff, Dennis Lancaster, individually and on behalf of all other similarly situated. by its attorneys, Byron Carlson Petri & Kalb, LLC, and hereby requests a trial by jury of twelve (12) in this cause on all counts against it.

BYRON CARLSON PETRI & KALB, LLC

By:   /s/ *Christopher W. Byron*
Christopher W. Byron, #6230810
Christopher J. Petri, #6257456
Brian R. Kalb, #6275228
411 St. Louis Street
Edwardsville, Illinois 62025
Tel: (618) 655.0600
Fax: (618) 655.4004
cwb@bcpklaw.com
cjp@bcpklaw.com
brk@bcpklaw.com

and

Christopher E. Roberts #6302857
David T. Butsch #6205434
Butsch Roberts & Associates LLC
231 S. Bemiston Ave., Suite 260
Clayton, MO  63105

Page 1 of 2

Tel: (314) 863-5700
Fax: (314) 863-5711
butsch@butschroberts.com
croberts@butschroberts.com

***Attorneys for Plaintiff and***
***Putative Class Representative***

***EFILED***
Case Number 2023LA000615
Date: 4/20/2023 3:41 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

## IN THE CIRCUIT COURT
## THIRD JUDICIAL CIRCUIT
## MADISON COUNTY, ILLINOIS

DENNIS LANCASTER, individually )
and on behalf of all others similarly situated, )
                                    )

        Plaintiff,                )

                               )

        vs.                    )

                               )

LEWIS AND CLARK COMMUNITY )
COLLEGE,                   )

                               )

        Defendant.        )

Case No.   **2023LA000615**

CLASS ACTION

DEMAND FOR JURY TRIAL

## AFFIDAVIT

COMES NOW Christopher W. Byron, being duly sworn upon his oath, and states to the

Court as follows:

    1.     That I am one of the attorneys of record for the Plaintiff, Dennis Lancaster,

individually and on behalf of all other similarly situated, and it is my belief that Plaintiff's

damages are in excess of $50,000.00, based upon my investigation to date.

FURTHER AFFIANT SAYETH NOT.

                                       Christopher W. Byron

SUBSCRIBED AND SWORN TO before me this 20th day of April, 2023.

                                       Notary Public

OFFICIAL SEAL
JAMI MILLER
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES: 02/24/2027

22-_____

Page 1 of 1

EXHIBIT B

**IN THE CIRCUIT COURT**
**THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

| | | |
|---|---|---|
| DENNIS LANCASTER, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | Case No. 2023LA000615 |
| vs. | ) ) | CLASS ACTION |
| LEWIS AND CLARK COMMUNITY COLLEGE, | ) ) ) | DEMAND FOR JURY TRIAL |
| Defendant. | ) ) | |

<u>**SUMMONS**</u>

To the defendant:   Lewis and Clark Community College

You are hereby summoned and required to file a written answer in this case, or otherwise file your written entry of appearance, in the Office of the clerk of this Court (located at 155 North Main Street, Edwardsville, IL 62025), within 30 days after service of this Summons, exclusive of the day of service.

**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT.**

TO THE OFFICER:  This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service fees, if any, immediately after service.  If service cannot be made, this summons shall be returned so endorsed.  This summons may not be served later than 30 days after the day issued.

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider.

Visit **https://efile.illinoiscourts.gov/service-providers.htm** to learn more and to select a service provider.   If   you   need   additional   help   or   have   trouble   e-filing, visit **http://www.illinoiscourts.gov/FAQ/gethelp.asp**.

Christopher W. Byron, #6230810
411 St. Louis Street
P.O. Box 527
Edwardsville, IL  62025
cjp@bcpklaw.com
(618) 656-0600

WITNESS, _____4/20/2023_____, 2023.

/s/ Thomas McRae   /s/ Stacey Turner
_____
(Clerk of the Court)

Date of Service:_____
(To be inserted by officer on copy left with defendant or other person)

Page **1** of 2

STATE OF            )

                             ) SS

COUNTY OF        )

Sheriff's Fees: Mileage:_____

Service:_____

Return:_____

TOTAL:_____

## SERVICE

I certify that I served this summons on defendant as follows:
(Check appropriate box, and complete information below.)

☐      (a)      (Individual defendants - personal)
By leaving a copy and a copy of the complaint with each individual defendant personally.

☐      (b)      (Individual defendants - abode)
By leaving a copy and a copy of the complaint at the usual place of abode of each individual defendant with a person of his family, of the age of 13 years or upwards, informing that person of the contents and also sending a copy of the summons in a sealed envelope with postage fully prepaid, addressed to each individual defendant at his usual place of abode.

☐      (c)      (Corporation defendants)
By leaving a copy of the complaint with the registered agent, officer or agent of each defendant corporation.

☐      (d)      (Other service)

☐      Defendant not found in my County.

Name of Defendant_____ Date of Service:_____

Name of Person
Summons Given To_____ Time:_____

Sex:_____ Race:_____ Approximate Age:_____ Date of Mailing:_____

Place of Service:_____ Notes, Other:_____

_____ Sheriff, by: _____Deputy.

Page **2** of **2**

EXHIBIT C

```
         COURT DOCKET  -  MADISON  COUNTY, ILLINOIS
```
```
Case: 2023LA000615        LANCASTER DENNIS vs LEWIS AND CLARK COMMUN      DATE: 2023-06-02
Type: TORT - MONEY DAMAGES (OVER  Judge: RUTH DENNIS          Jury Trial: J   TIME: 13.30.26
From: 00/00/0000 To: 99/99/9999 All Case Entries       First Date First View
Filed: 4/20/2023  Status: Open Case on 4/20/2023
        CASE PARTICIPANTS NAMES                        ATTORNEYS
        -----------------------                        ---------
PLA     LANCASTER DENNIS                               BYRON CHRISTOPHER W
DEF     LEWIS AND CLARK COMMUNITY COLLEGE


DATE
----------
04/20/2023 CLASS ACTION COMPLAINT Plaintiff LANCASTER DENNIS
           Defendant LEWIS AND CLARK COMMUNITY COLL
04/20/2023 OTHER FILING DOCUMENT ENTRY OF APPEARANCE FILED BY
           Plaintiff LANCASTER DENNIS
04/20/2023 JURY DEMAND 12 PEOPLE-NOT NEW CASE Fee $212.50 FILED BY
           Plaintiff LANCASTER DENNIS
           Judge:RUTH DENNIS
04/20/2023 TORT - MONEY DAMAGES (OVER 50K) Fee $314.00 FILED BY
           Plaintiff LANCASTER DENNIS
04/20/2023 JURY DEMAND - FEES PREVIOUSLY PAID JURY DEMAND FILED BY
           Plaintiff LANCASTER DENNIS
04/20/2023 AFFIDAVIT FILED BY Plaintiff LANCASTER DENNIS
04/20/2023 JA Assignment Order HON. DENNIS RUTH S/STOBBS
           Document JAORDER.DOC Was Printed
04/20/2023 SUMMONS ISSUED & SENT TO P/A VIA EFILE ISSUED
           Defendant LEWIS AND CLARK COMMUNITY COLL
           Document SU30DAY.DOC Not Printed
05/09/2023 AFFIDAVIT OF SERVICE ON LEWIS & CLARK COMMUNITY COLLEGE ON 5/4/23 BY S
           FILED BY Plaintiff LANCASTER DENNIS
           PS L/W SUE KEENER (AUTHORIZED AGENT/EXECUTIVE SECRETARY)
```