**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION**

| | | |
|---|---|---|
| DENNIS LANCASTER, individually and on behalf of all similarly situated individuals, | ) ) ) | |
| Plaintiff, | ) ) | No. 3:23-cv-1914 |
| v. | ) ) | |
| LEWIS AND CLARK COMMUNITY COLLEGE, | ) ) ) | |
| Defendant. | ) | |

## DEFENDANT'S NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332(d), 1141, and 1146, Defendant Lewis and Clark Community College ("Lewis & Clark" or "Defendant"), hereby removes this action filed by Plaintiff Dennis Lancaster ("Plaintiff"), individually and on behalf of all similarly situated individuals, from the Circuit Court for the Third Judicial Circuit, Madison County, Illinois, to the United States District Court for the Southern District of Illinois, East St. Louis Division.  In support of this Notice of Removal, Lewis & Clark states as follows:

## JURISDICTION AND VENUE

1.      This is a civil action over which the Court has original subject matter jurisdiction under 28 U.S.C. § 1332.  Removal is proper under the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d).

2.      This Court is in the judicial district and division embracing the place where the state court case was brought and is pending.  Thus, this Court is the proper district court to which this case should be removed.  28 U.S.C. §§ 1441(a), 1446(a).

## BACKGROUND TIMELINESS OF REMOVAL

3.     Plaintiff Dennis Lancaster filed his Class Action Complaint (the "Complaint") on April 20, 2023, in the Third Judicial Circuit Court for Madison County, Illinois, captioned *Dennis Lancaster v. Lewis & Clark Community College*, Case No. 2023LA000615 (the "State Court Action"). Plaintiff filed the Complaint as a putative class action.

4.     On May 4, 2023, Plaintiff served Lewis & Clark with a copy of the Summons and Complaint filed in the State Court Action. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all documents received in the State Court Action by Lewis & Clark are attached hereto as Exhibits. Specifically, attached to this Notice of Removal are true and correct copies of (1) the operative Complaint (**Exhibit A**); (1) the Summons (**Exhibit B**); and (2) the State Court Action docket (**Exhibit C**).

5.     No further pleadings or documents (*i.e.*, answers, responses, replies to pending motions, notices of appearance, or state court orders terminating or dismissing parties) have been filed in the State Court Action.

6.     This removal is timely because Lewis & Clark filed this Notice of Removal within 30 days of being served with the Complaint. *See* 28 U.S.C. § 1446(b) (notice of removal shall be filed within 30 days of service); *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999) (time period for removal begins when the defendant is served).

## CAFA JURISDICTION

7.     Basis of Original Jurisdiction. This Court has original jurisdiction over this action under CAFA (codified in pertinent part at 28 U.S.C. § 1332(d)). Section 1332(d) provides that a district court shall have original jurisdiction over a class action with one hundred (100) or more putative class members in which the matter in controversy, in the aggregate, exceeds the sum or

value of $5,000,000, and any member of the putative class is citizen of a different state than that of the defendant. *Kurz v. Fid. Mgmt. & Rsch. Co.*, No. 07-cv-592-JPG, 2007 WL 2746612, at *2 (S.D. Ill. Sept. 18, 2007) (collecting cases).

8.     As set forth below, pursuant to 28 U.S.C. § 1332(d) and § 1441(a), Lewis & Clark may remove the State Court Action to federal court under CAFA because: (i) this action is pled as a class action; (ii) the putative class includes more than one hundred members; (iii) "minimal diversity" exists, *i.e.*, at least one member of the putative class is a citizen of a state different from that of Defendant; and (iv) the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000, exclusive of interest and costs. *See Schutte v. Ciox Health, LLC*, 28 F.4th 850, 853 (7th Cir. 2022).

## THE ACTION IS PLED AS A CLASS ACTION

9.     "CAFA defines a class action as 'any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action.'" *Warma v. NBTW, Inc.*, No. 09–cv–144–DRH, 2009 WL 3230023, at *1 (S.D. Ill. Oct. 2, 2009) (quoting 28 U.S.C. § 1332(d)(1)(B)).

10.     Plaintiff brings this action as a "class action" defined as "[a]ll individuals residing in Illinois whose PII and/or PHI was compromised in the Data Breach disclosed by Lewis and Clark on or about April 21, 2022." [Compl., ¶ 52.]  Although Plaintiff does not state the statute or rule pursuant to which he seeks to bring a class action, because this case was filed in Illinois state court, Plaintiff presumably seeks to bring a class action pursuant to Illinois rules and/or statues concerning class actions, or 735 Ill. Comp. Stat. 5/2-801.

11.     Because 735 Ill. Comp. Stat. 5/2-801 is a "similar State statute authorizing an action to be brought by 1 or more representatives as a class action," *see LG Display Co., Ltd. v. Madigan*, 665 F.3d 768, 771 (7th Cir. 2011) (stating that 735 Ill. Comp. Stat. 5/2-801 is the Illinois "state equivalent" to Federal Rule of Civil Procedure 23), the first CAFA requirement is satisfied.

## THE PUTATIVE CLASS INCLUDES AT LEAST ONE HUNDRED (100) MEMBERS

12.     Plaintiff alleges that in November 2021, Lewis & Clark experienced a "ransomware incident" that impacted "thousands of persons," including current and former students and employees' personal and medical information (the "Data Incident").  [Compl., ¶¶ 1, 3.]  Plaintiff further alleges that he received notice of the Data Incident from Lewis & Clark on April 2022.  [*Id.* at ¶ 5.]

13.     Plaintiff now purports to bring a class action on behalf of "[a]ll individuals residing in Illinois whose PII and/or PHI was compromised in the Data [Incident] disclosed by Lewis and Clark in or about April 21[,] 2022."  [*Id.* at ¶ 52.]

14.     Further, Plaintiff assert that "thousands of persons" were impacted by the Data Incident.  [*Id.* at ¶ 1; *see also id.* at ¶ 55 ("There are thousands of potential Class members.").]

15.     Lewis & Clark sent data incident notification letters to approximately 37,846 individuals with Illinois addresses.

16.     Based on the above, the number of putative class members exceeds the statutorily-required minimum of 100 individuals.  *See Schutte*, 28 F.4th at 855 (stating that defendant "was entitled to take at face value the complaint's allegation of 'several thousand' class members" for purposes of satisfying CAFA); *see also Roppo v. Travelers Com. Ins. Co.*,

869 F.3d 568, 581 (7th Cir. 2017) (defendant attempting to satisfy jurisdictional requirements "may rely on the estimate of the class number set forth in the complaint").

## MINIMAL DIVERSITY OF CITIZENSHIP

17.     Pursuant to 28 U.S.C. § 1332(d)(2)(A), "the district court shall have original jurisdiction" over a "class in which . . . *any member of the class of plaintiffs* is a citizen of a State different from *any defendant*." (emphasis added). *See also Cooks v. Hertz Corp.*, Case No. 15-CV-652-NJR-PMF, 2016 WL 2986234, at *1 (S.D. Ill. Apr. 20, 2016) ("[U]nder CAFA, only 'minimal diversity' between the parties is required."). Accordingly, if any member of the purported class is a citizen of a state different than the state of citizenship of Lewis & Clark, then minimal diversity exists. *See Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 732 (7th Cir. 2017) (stating that "because CAFA requires 'minimal diversity,' jurisdiction was appropriate in the district court as long as at least one person who would be a member of the class [plaintiff] sought to represent was a citizen of a state other than Illinois," the state of citizenship of the defendant).

18.     Lewis & Clark's Citizenship. Pursuant to 28 U.S.C. § 1332, Lewis & Clark is a local community college with locations in Edwardsville, Godfrey, and East Alton, Illinois and with headquarters in Illinois. As an Illinois community college, it is considered a "political subdivision" of Illinois. *See Am. Ctr. for Excellence in Surgical Assisting Inc. v. Cmty. Coll. Bd. of Trs. of Cmty. Coll. Dist. 502*, 315 F. Supp. 3d 1044, 1054 (N.D. Ill. 2018) (holding that "a community college district is a 'unit of local government' and therefore a 'political subdivision' subject to the Local Government Selection Act") (quoting *Cty. of Du Page v. Dep't of Prof'l Regulation*, 842 N.E.2d 1255, 1265 (Ill. App. Ct. 2006)); *see also Marsden v. Kishwaukee Cmty. Coll.*, 572 F. Supp. 3d 512, 527 (N.D. Ill. 2021). Thus, as a "political subdivision" of Illinois, Lewis & Clark is a citizen of Illinois for purposes of CAFA. *See Pinellas Cty. v. Great Am.*

*Indus. Grp., Inc.*, No. 90 C 5254, 1991 WL 259020, at * 1 (N.D. Ill. Dec. 2, 1991) ("As a general rule, the political subdivision of a state . . . is a citizen of the state for diversity purposes.") (citing *Moor v. Cty. of Alameda*, 412 U.S. 693, 717-18 (1973)); *see also Lansing Cmty. Coll. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 681 F. Supp. 2d 868, 873 (W.D. Mich. 2010) (public community colleges considered "political subdivisions").  Accordingly, Lewis & Clark is a citizen of Illinois for CAFA purposes.

19.    <u>Plaintiff's Citizenship</u>. With respect to diversity jurisdiction, a party's citizenship is determined by their domicile. *See Denlinger v. Brennan*, 87 F.3d 214, 216 (7th Cir. 1996); *Guar. Nat'l Title Co., Inc. v. J.E.G. Assoc.*, 101 F.3d 57, 58-59 (7th Cir. 1996) (citizenship, not residence, matters for diversity jurisdiction); *Meyerson v. Harrah's E. Chi. Casino*, 299 F.3d 616, 617 (7th Cir.2002) ("[R]esidence and citizenship are not synonyms and it is the latter that matters for purposes of the diversity jurisdiction.").  "Domicile" refers to the place where one resides and intends to remain.  *Kabes v. Sch. Dist. of River Falls*, 387 F. Supp. 2d 955, 977 (W.D. Wis. 2005) (citing *Dakuras v. Edwards*, 312 F.3d 256, 258 (7th Cir. 2002)).  A person's state of residency is not equivalent to domicile (nor, therefore, citizenship), although residency is one factor to be considered in the domicile analysis.  *Denlinger*, 87 F.3d at 216 ("[I]t takes physical presence in a state, with intent to remain there, to establish domicile."); *see also Cassens v. Cassens,* 430 F. Supp. 2d 830, 833 (S.D. Ill. 2006) ("Citizenship' for diversity purposes is determined . . . by a party's domicile, which means the state where a party is physically present with an intent to remain there indefinitely.").

20.    As alleged in the Complaint, Plaintiff is an "individual who resides in Edwardsville, Illinois" and is a former student of Lewis and Clark who provided personal data to

Lewis and Clark.  [Compl., ¶ 11.]  Accordingly, absent any information to the contrary, Plaintiff is a citizen of Illinois for purposes of diversity jurisdiction.

21.     Plaintiff, however, also seeks to represent a class that includes "[a]ll individuals residing in Illinois whose PII and/or PHI was compromised in the Data Breach disclosed by Lewis and Clark on or about April 21, 2022."  [*Id.* at ¶ 52.]  Plaintiff does not make clear in his definition of the class whether the class includes individuals who were residing in Illinois when they provided their information to Lewis & Clark, when they attended Lewis & Clark, when the Data Incident occurred, when Lewis & Clark sent notice of the Data Incident, at the time the Complaint was filed, or at the time this Notice of Removal was filed.  Furthermore, to date, Lewis & Clark has sent notice of the alleged Data Incident to individuals with addresses in 48 states other than Illinois and to individuals with addresses of military bases in Europe.  And, even the individuals for whom Lewis & Clark had an Illinois address, many of them also had reported addresses outside of Illinois, which is not surprising given that Lewis & Clark operates a community college near the border of several states.  Because (a) residency alone is not equivalent to domicile and because (b) Lewis & Clark is a college that serves both out-of-state[1] and international students[2] with campuses on the Illinois state border,[3] it is more likely than not that some, if not many, of those Illinois "residents" who received a notification letter are not "citizens" of Illinois for purposes of CAFA jurisdiction.  *See, e.g., Troyer v. Jeff Foster Trucking, Inc.*, Civil No. 10–258–GPM, 2010 WL 1797623, at *2 (S.D. Ill. May 4, 2010) (stating

---

[1] *How Much Does Lewis and Clark College Charge for Tuition?*, College Factual, https://www.collegefactual.com/colleges/lewis-and-clark-community-college/paying-for-college/tuition-and-fees/ (Lewis & Clark offers both in-state and out-of-state tuition) (last visited June 1, 2023).

[2] *International Students*, https://www.lc.edu/international/ (last visited June 1, 2023).

[3] *Why L&C: Blazing a Trail*, https://www.lc.edu/discover/ (stating that Lewis & Clark has "[m]ultiple campuses in Godfrey, Edwardsville & Alton" and offers "easy access to St. Louis[, Missouri]") (last visited June 1, 2023).

that a "proper allegation" of citizenship for diversity purposes is not synonymous with "residency"). Further, because "citizenship" of an individual is determined at the time of removal, *see Cleary v. Phillip Morris Inc.*, 656 F.3d 511, 515 (7th Cir. 2011) (citation omitted); *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007), and Plaintiff does not otherwise limit his class definition to "current" Illinois residents or citizens, it is at likely that at least some prior Illinois residents who were impacted in the Data Incident were residents or even citizens of other states at the time of removal.

22.     In short, the class, as defined by Plaintiff, includes individuals who, in the absence of other evidence to the contrary, may be residents—but not citizens—of Illinois, the state of citizenship of Lewis & Clark. Said differently, because at least one putative class member is a citizen of a state other than the state of citizenship of Lewis & Clark, "minimal diversity" is established pursuant to CAFA. *See Johnson v. Prisoner Transp. Servs., Inc.*, Case No. 21-C-0254, 2021 WL 1661273, at *2 (E.D. Wis. Apr. 28, 2021) (stating that "even if the plaintiff resided in Canada when the complaint was filed, he could have been a lawful permanent resident of the United States" and reiterating that "for jurisdictional purposes, residence is not the same thing as domicile").

## THE AMOUNT IN CONTROVERSY EXCEEDS THE CAFA THRESHOLD[4]

23.     Where a complaint does not specify the damages amount sought, as is the case with Plaintiff's Complaint, the removing defendant must prove by a preponderance of the evidence that the jurisdictional amount in controversy is satisfied. 28 U.S.C.A. § 1446(c)(2)(B).

---

[4] The amounts set forth in this Notice of Removal are solely for purposes of establishing that the amount in controversy exceeds the $5,000,000 threshold and are not intended and cannot be construed as an admission that Plaintiff or putative class members can state or have stated a claim or that they are entitled to damages in any amount. Lewis & Clark denies liability, denies Plaintiff and/or class members are entitled to recover any amount, and denies that a class can be properly certified in this matter.

The United States Supreme Court has held that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" to meet the amount-in-controversy requirement. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 90 (2014). Further, a removing party "needs to provide only a 'good-faith estimate' that is 'plausible and adequately supported by the evidence' to satisfy the amount-in-controversy requirement." *Schutte*, 28 F.4th at 854 (quoting *Blomberg v. Serv. Corp. Int'l*, 639 F.3d 761, 763 (7th Cir. 2011)). The amount in controversy is satisfied unless it appears to a "legal certainty" that the plaintiff cannot actually recover that amount. *Roppo*, 869 F.3d at 579 (quoting *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541 (7th Cir. 2006)). Additionally, in determining the amount in controversy under CAFA, the claims of all plaintiffs are aggregated to determine if the amount in controversy is more than $5,000,000. *G.M. Sign Inc. v. Silverman Enters.*, 09 C 965, 2009 WL 10701000, at *1 (N.D. Ill. July 23, 2009) ("The defendant may aggregate the claims of the class members to reach the jurisdictional amount."); *Roppo*, 869 F.3d at 576 (district court concluded that "'[e]ven if the alleged additional damages of each putative class member were as small as $10,000,'" as Travelers had estimated, "'then the aggregate damages for the putative class would nevertheless exceed the requisite amount of $5 million (i.e., 500 x $10,000 = $5 million'"). Finally, in determining the amount in controversy, the Court should accept the removing party's allegations as true and require only a "good-faith estimate . . . [that] is plausible and adequately supported by the evidence." *Blomberg*, 639 F.3d at 736 (citation omitted). The removing party "does not need to establish what damages the plaintiff will recover, but only how much is in controversy between the parties." *Id.* (citing *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005)); *see also Schutte*, 28 F.4th at 854 ("In addressing such issues about amounts in controversy, it is critical for courts to focus on

the phrase 'in controversy' and to remember the difference between even highly unlikely results and truly impossible results, and to avoid prematurely trying the merits of the case in deciding jurisdiction.").

24.   Here, Plaintiff seeks damages in the form of "declaratory and other equitable relief," "injunctive relief as is necessary to protect the interests of Plaintiff and the Class"; "compensatory, exemplary, punitive damages, and statutory damages, including pre- and post-judgment interest"; "restitution and damages to Plaintiff and the Class"; "attorneys' fees and costs, as allowed by law"; and "such other or further relief as may be appropriate under the circumstances."   [Compl., Prayer for Relief.]   Plaintiff also claims that he and Class members have suffered injury and damages, including, but not limited to:

> (a) The loss of the opportunity to control how their PII and PHI are used; (b) diminution in value of their PII and PHI; (c) The compromise and continuing publication of their PHI and PII; (d) Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud; (e) Lost opportunity costs and lost wages associated with the time and effort expended addressing and trying to mitigate the actual and future consequences of the Data [Incident] . . .; [and] (f) Unauthorized use of stolen PII and PHI; and the continued risk to their PHI and PII . . .

[*Id.* at ¶ 38.]   Plaintiff also claims he and members of the class "suffered actual damages in an amount equal to the difference in value between their purchases made with reasonable data privacy and security practices and procedures that [they] paid for, and those purchases without unreasonable data privacy and security practices and procedures they received" and request that Lewis & Clark "be compelled to disgorge into a common fund . . . all unlawful or inequitable proceeds received to it as a result" and be "[e]njoin[ed] . . . from further deceptive and unfair practices and making untrue statements about the Data [Incident.]"   [*Id.* at ¶¶ 92, 94; Prayer for Relief(D).]

10

25.     As demonstrated below, the allegations in the Complaint make it more likely than not that the amount in controversy under CAFA exceeds $5,000,000.

26.     <u>Negligence</u>.   Plaintiff states a claim for negligence, arguing that Plaintiff and members of the class "entrusted their PII and PHI to Lewis and Clark" and that Lewis & Clark had a "duty to exercise reasonable care in handling and using the PII and PHI in its care and custody, including implementing industry-standard security procedures sufficient to reasonably protect the information from the Data [Incident][.]"   [Compl., ¶¶ 64-72.]   Plaintiff also claims that Lewis & Clark had a duty to "notify them within a reasonable time frame of any breach of the security of their PII and PHI."   [*Id.* at ¶ 67.]

27.     Plaintiff alleges that Lewis & Clark breached these and other duties, and therefore was negligent, by failing to "adequately safeguard their PII and PHI in accordance with state-of-the-art industry standards for data security" and by acting in "wanton and reckless disregard for the security and confidentiality of Plaintiff's and members of the class's PII and PHI by disclosing and providing access to this information to third parties and by failing to properly supervise both the way the PIII and PHI was stored, used, and exchanged, and those in its employ who made that happen."   [*Id.* at ¶ 66.]   Plaintiff also avers that Lewis & Clark breached its duties by "failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers" and "by failing to provide reasonably timely notice of the Data [Incident] to Plaintiff and members of the class[.]"   [*Id.* at ¶ 71.]

28.     The Complaint contains no allegations that would support or suggest the amount in damages Plaintiff or any of the putative class members allegedly sustained as a consequence of Lewis & Clark's negligence.   However, because Plaintiff seeks injunctive relief and has specifically stated both that "PII and PHI disclosures are extremely damaging to consumers'

finances, credit history, and reputation" and that he and the class "will likely have to spend time correcting fraudulent information in their credit reports and continually monitoring their reports for future inaccuracies," among other things, [*id.* at ¶¶ 45, 49; Prayer for Relief(C)], one option for assigning a value to these damages is through the cost of credit monitoring.

29.     Three prominent identity-protection agencies (Equifax, IDShield, and Experian) advertise monthly rates for credit monitoring services ranging from $14.95 to $24.99 per person per month.  For example, IDShield Individual offers one-bureau credit monitoring with an unlimited service guarantee, dark web internet monitoring, data breach notifications, full-service restoration when theft occurs, and 24/7 emergency assistance, among other services, for $14.95 per month for one individual.[5]  Similarly, both Equifax[6] and Experian[7] offer products that provide 3- Bureau credit monitoring with up to $1 million in identity theft insurance for $19.95 and $24.99 a month, respectively.  Multiplying the cost of providing an additional year of credit-monitoring services at $14.95 (the cheapest of the three products) by the approximately 37,846 incident response letters Lewis & Clark mailed to individuals in Illinois, the amount in controversy for just one additional year of credit monitoring is approximately $6,789,572.40 (calculated as 37,846 individuals with Illinois addresses notified of the Data Incident, times 12

---

[5] See *IDShield Plans & Pricing*, https://www.idshield.com/plans-and-pricing (last visited June 1, 2023); *see also IDShield Individual (Illinois)*,
https://checkout.idshield.com/?plan=IDSI&freetrial=true&region=TX (last visited June 1, 2023).
[6] *See Equifax*, https://www.equifax.com/equifax-complete/Equifax/?CID=2_equifax%20credit%20monitoring_G_e&adID=502355994880&DS3_KIDS=p50281164756&campaignid=71700000061086345&sakwid=43700050281164756&gclid=EAIaIQobChMIzpzAneG28wIVS9KzCh3vCA_MEAAYASAAEgIjevD_BwE&gclsrc=aw.ds (last visited June 1, 2023).
[7] *See Experian CreditLock*, https://www.experian.com/consumer-products/creditlock.html?pc=sem_exp_google&cc=sem_exp_google_ad_858684474_45405224126_515795132613_kwd-381685474538_e____k_EAIaIQobChMIwIyw3OCR_wIV8zWtBh1hrQYEEAAYAiAAEgIt-_D_BwE_k_&ref=identity&awsearchcpc=1&gad=1&gclid=EAIaIQobChMIwIyw3OCR_wIV8zWtBh1hrQYEEAAYAiAAEgIt-_D_BwE, (last visited June 1, 2023).

months, times $14.95 per month).  And providing just two additional years of credit-monitoring services at $14.95 (the cheapest of the three products) to all members of the putative class increases the amount in controversy to approximately $13,579,144.80 for credit monitoring alone, far in excess of the CAFA $5,000,000 threshold (calculated as 37,846 individuals with Illinois addresses notified of the Data Incident, times 24 months, times $14.95 per month).

30.    Accordingly, Plaintiff's and the putative class members' potential credit-monitoring damages alone exceed the CAFA $5,000,000 jurisdictional amount.  Combined with their other alleged negligence damages, the total amount in controversy is well in excess of $5,000,000.

31.    <u>Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act</u>. Plaintiff also claims that Lewis & Clark violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1 *et seq.*   [Compl., ¶¶ 95-101.] Plaintiff asserts that Lewis & Clark not only violated the Illinois Personal Information Protection Act ("IPIPA"), 815 Ill. Comp. Stat. 53/20 *et seq.*, but also that Lewis & Clark violated the ICFA by engaging in unfair and deceptive acts or practices in the conduct of trade or commerce.  [*Id.* at ¶ 96.]

32.    Plaintiff claims that Lewis & Clark violated the ICFA vis-à-vis the IPIPA by "failing to implement and maintain reasonable security measures to protect Plaintiff and Class's PHI and PII."  [*Id.* at ¶ 99.]  As a result of Lewis & Clark's purported ICFA and IPIPA violations, Plaintiff claims that he and class members have suffered actual damages.  [*Id.* at ¶ 101.]

33.    Although Plaintiff's Complaint contains no allegations that would support or suggest the amount in controversy damages he or any of the putative class allegedly sustained as

a result of Lewis & Clark's alleged violations of the ICFA and IPIPA, the ICFA allows for a recovery of "actual damages" suffered as a result of the ICFA violation. 815 Ill. Comp. Stat. 505/10a(a). The ICFA also allows for potential recovery of punitive damages, injunctive relief, and attorneys' fees. *Id.* Thus, assuming these damages amounts are included in the amount in controversy, the amount in controversy would far exceed the CAFA $5,000,000 threshold.

34.   <u>Prayer for Other Monetary and Injunctive Relief</u>.   Plaintiff also prays for additional monetary relief, including punitive damages, as well as injunctive and equitable relief. [Compl., Prayer for Relief.]   Specifically, Plaintiff requests "declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the class," [*id.* at Prayer for Relief(B)]; "injunctive relief as is necessary to protect the interests of Plaintiff and the Class," [*id.* at Prayer for Relief(C)]; injunctive relief to "enjoin[] Lewis and Clark from further deceptive and unfair practices . . .," [*id.* at Prayer for Relief(D)]; and "compensatory, exemplary, punitives damages, and statutory damages, including pre- and post-judgment interest," [*id.* at Prayer for Relief(E)].

35.   First, courts in the Seventh Circuit have found requests for punitive damages should be included in the amount-in-controversy calculation even where not explicitly requested. *See Schutte*, 28 F.4th at 855 ("[I]t is well-settled that punitive damages . . . 'factor into the amount-in-controversy calculation.'") (citation omitted); *Roppo*, 869 F.3d at 582 ("Ms. Roppo also seeks punitive damages, which factor into the amount-in-controversy calculation."). And here, punitive damages are available under the ICFA and are also potentially available for Plaintiff's negligence claim because Plaintiff asserts that Lewis & Clark "acted with wanton and reckless disregard" with respect to Plaintiff's and the putative class's PII. [Compl., ¶ 66.]; *see, e.g.*, *Turner v. GAC Star Quality, LLC*, No. 21 C 5867, 2023 WL 3226196, at *2 n.2 (N.D. Ill.

14

May 3, 2023) (stating that the availability of punitive damages under the ICFA and potentially for plaintiffs' claims "assure[d] the Court of its subject-matter jurisdiction" as the amount-in-controversy requirement was clearly met) (citing 815 Ill. Comp. Stat. 505/10a(a) (punitive damages available under the ICFA) & *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812-13 (7th Cir. 2017) (under Illinois law, punitive damages are available for tort claims upon a showing of gross negligence or wanton conduct)).

36.     Accordingly, although no allegations in the Complaint allow Lewis & Clark to determine with specificity the amount of punitive damages the Court would potentially award, Lewis & Clark underscores these allegations to the Court as further evidence that the amount-in-controversy far exceeds the $5,000,000 CAFA threshold.

37.     Second, "[i]n actions seeking declaratory or injunctive relief, it is 'well established that the amount in controversy is measured by the value of the object of the litigation.'"  *Golin v. Neptune Mgmt. Corp.*, 704 F. App'x 591, 595 (7th Cir. 2017) (quoting *Hunter v. Wash. St. Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)).  In the Seventh Circuit, "that value may be calculated by measuring the benefit to the plaintiff *or* the detriment to the defendant[.]"  *Id.* (citing *Macken ex rel. Macken*, 333 F.3d at 799-800 (7th Cir. 2003)).

38.     In determining the "value of the object of the litigation," courts in the Seventh Circuit apply the "either viewpoint rule," which provides that the value of injunctive or declaratory relief must be estimated from either the plaintiff's or defendant's viewpoint. *Lambert v. Hughes Network Sys., LLC*, No. 10–cv–0571, 2010 WL 3034212, at *2 (N.D. Ill. Aug. 2, 2010).   Under this rule, Seventh Circuit Courts must determine the amount in controversy for purposes of injunctive relief by how much it will "cost to comply[] with an injunction."  *Id.*  Further, in class actions removed under CAFA, the Court may aggregate each

class member's claims for injunctive relief (and respective damages) to determine whether the aggregate cost to the defendant of complying with any injunctive relief requested exceeds the amount in controversy threshold.  *See, e.g.*, *Pappas v. Auto Club Ins. Ass'n*, No. 20 CV 4205, 2021 WL 7179123, at *1 (N.D. Ill. Jan. 12, 2021) (assessing "likelihood of cost to defendant from an injunction" to calculate amount in controversy).

39.     Applied here, any potential recovery to Plaintiff, including injunctive and equitable relief as necessary to protect the interests of Plaintiff and the putative class, to the extent such relief exists, combined with the other damages alleged in the Complaint, underscores that the amount in controversy is greater than $5,000,000.

40.     From the "viewpoint" of Lewis & Clark, the aggregate cost to Lewis & Clark of complying with Plaintiff's request for relief to "enjoin[] Lewis and Clark from further deceptive and unfair practices . . ." [Compl., Prayer for Relief(D)], would potentially involve overhauling Lewis & Clark's state and federal regulatory privacy and cyber security policies, implementing new training procedures, and potentially hiring outside auditors and third-party forensic firms to conduct testing and reviews of Lewis & Clark's systems, network, and relevant policies in order to try to make itself invulnerable to a future data incident.  The cost of modifying Lewis & Clark's privacy and cyber security policies in order to do so could also include instituting new training and hiring outside vendors.  Together with the other injunctive and other monetary relief requested, and combined with the other damages alleged in the Complaint, the cost to comply with Plaintiff's injunctive relief request further underscores that the amount in controversy is greater than $5,000,000.  *See, e.g.*, *Lokey v. CVS Pharmacy, Inc.*, Case No. 20-cv-04782-LB, 2020 WL 5569705, at *5 (N.D. Cal. Sept. 17, 2020) (agreeing with defendant's assessment that the cost of complying with plaintiff's requested injunctive relief was "at least $3,888,363," when

compliance potentially entailed "overhauling [the product at issue] in some way," including by "removing the product from shelves and warehouses, destroying existing inventory, developing new packaging, replenishing the inventory, and changing the product's marketing and advertising scheme" and therefore finding the injunctive relief costs, considered with the other damages alleged in the complaint, exceeded the $5 million CAFA threshold).

41.     <u>Other Claims</u>.  In addition to the claims and related damages discussed above, Plaintiff also asserts claims for (1) breach of implied contract, [Compl., ¶¶ 73-87] and (2) unjust enrichment, [*id.* at ¶¶ 88-84].  Plaintiff alleges that he and the class have suffered or will suffer damages "because of Defendant's breaches of its agreements, including breaches . . . through violations of the covenant of good faith and fair dealing," [*id.* at ¶ 87], and "actual damages in an amount equal to the difference in the value between their purchases made with reasonable data privacy and security practices and procedures that Plaintiff and members of the class paid for, and those purchases without unreasonable data privacy and security practice and procedures they received," [*id.* at ¶ 92].  As a result, Plaintiff seeks compensation for these alleged injuries and requests that Lewis & Clark "be compelled to disgorge into a common fund to benefit Plaintiff and members of the class all unlawful or inequitable proceeds received by it as a result of the conduct and Data [Incident] alleged [in the Complaint]."  [*Id.* at ¶ 94; Prayer for Relief.]

42.     No allegation in the Complaint allow Lewis & Clark to calculate with specificity the amount of these alleged damages and relief.  However, Lewis & Clark underscores these allegations to the Court as further evidence that the amount in controversy exceeds $5,000,000, as already established above.

**ATTORNEYS' FEES**

43.     When the underlying substantive law provides for an award of attorneys' fees, a party may include that amount in its calculation of the amount in controversy.  *De Falco v. Vibram USA, Inc.*, No. 12 C 7238, 2013 WL 1122825, at * 4 (N.D. Ill. Mar. 18, 2013); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 512 (7th Cir. 2006).  The Court may also consider reasonable estimates of attorneys' fees when analyzing disputes over the amount in controversy.  *See Nieto v. Perdue Farms, Inc.*, No. 08–07399, 2010 WL 1031691, at *2 (N.D. Ill. Mar. 17, 2010) ("[G]iven the large number of plaintiffs, and that the [ICFA] permits recovery of punitive damages and attorney's fees, it is plausible that the amount in controversy will exceed $5,000,000.").

44.     Plaintiff here has sought attorneys' fees "as allowed by law."  [Compl,, Prayer for Relief(G).]  Because Plaintiff states a claim for violation of the ICFA, and attorneys' fees may be awarded by the Court in its discretion for a violation of the ICFA, *see United States v. Fischer Excavating, Inc.*, Case No. 4:12-cv-04082-JEH, 2017 WL 3971091, at *8 n.7 (C.D. Ill. Sept. 8, 2017) ("Attorneys' fees may be awarded to the prevailing party under section 10a(c) of the [ICFA].") (quoting 815 Ill. Comp. Stat. 505/10a(c) (""[I]n any action brought by a person under this Section, the Court may grant injunctive relief where appropriate and may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party.")), attorneys' fees should be included in the amount in controversy calculation.

45.     In the Seventh Circuit, an approximate 33% fee award is typical in class actions. *Teamsters Local Union No. 604 v. Inter-Rail Transp., Inc.*, No. 02-CV-1109-DRH, 2004 WL 768658, at *1 (S.D. Ill. Mar. 19, 2004); *see also In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1033 (N.D. Ill 2000) (recognizing established 30% benchmark for an award of

fees in class actions).   Using this benchmark, attorneys' fees, when added to the amounts discussed above, further increases the amount in controversy for alleged exposure above the jurisdictional minimal for removal.   *See McGoveran v. Amazon Web Servs., Inc.*, 488 F. Supp. 3d 714, 718 (S.D. Ill. 2020) ("Even assuming a class size of only 1,000, the Complaint alleges damages of at least $5,000,000.   And when considering attorneys' fees and potential statutory damages . . . the amount in controversy well exceeds the required threshold.").

46.     Accordingly, because this case was pled as a class action, and because minimal diversity, class size, and the amount in controversy requirements of CAFA are satisfied, Lewis & Clark has properly removed the State Court Action to this Court.

47.     Indeed, based on the above, there is no "legal certainty" that Plaintiffs could not recover an aggregate amount exceeding $5,000,000 required for CAFA removal.   *See* 28 U.S.C. § 1332(d)(6); *Schutte*, 28 F.4th at 858 ("Once the proponent of jurisdiction has set out the amount in controversy, only a 'legal certainty' that the judgment will be less forecloses federal jurisdiction.") (quoting *Brill*, 427 F.3d at 448); *Blomberg*, 639 F.3d at 764 ("Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5,000,000, the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much.") (citations omitted).   Accordingly, Lewis & Clark has properly removed the State Court Action to this Court.[8]

---

[8] The party opposing removal jurisdiction has the burden of proving that a discretionary or mandatory exception under CAFA applies.   *Bond v. Veolia Water Indianapolis, LLC*, 571 F. Supp. 2d 905, 908 (S.D. Ind. 2008) ("Under CAFA, the burden is on plaintiffs to show that one or more exceptions apply.") (citing *Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 680 (7th Cir. 2006)).   This Notice of Removal does not address, nor concede, any issues related to the CAFA jurisdiction exceptions.

## NOTICE

48.     As required by 28 U.S.C. § 1446(d), Lewis & Clark is providing written notice of the filing of this Notice of Removal to Plaintiff and is filing a copy of this Notice of Removal with the Clerk of the Third Judicial Circuit Court for Madison County, Illinois.

WHEREFORE, Defendant Lewis and Clark Community College removes the above-captioned action, now pending in the Circuit Court of Madison County, Illinois, to the United States District Court for the Southern District of Illinois, East St. Louis Division.

Dated: June 2, 2023                **BAKER & HOSTETLER LLP**

By: /s/ Amy L. Lenz
Amy L. Lenz
alenz@bakerlaw.com
One North Wacker Drive, Suite 4500
Chicago, Illinois  60606
Telephone: (312) 416-6200

Matthew D. Pearson (*pro hac vice* forthcoming)
mpearson@bakerlaw.com
600 Anton Boulevard, Suite 900
Costa Mesa, CA  92626
Telephone: (714) 754-6600

Sarah A. Ballard (*pro hac vice* forthcoming)
sballard@bakerlaw.com
1801 California Street, Suite 4400
Denver, CO  80202
Telephone: (303) 861-0600

*Counsel for Defendant Lewis and Clark Community College*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, certifies that she caused a true copy of the foregoing

**Notice of Removal** to be served on counsel of record via email on June 2, 2023:

Christopher W. Byron
Christopher J. Petri
Brian R. Kalb
BYRON CARLSON PETRI & KALB, LLC
411 St. Louis Street
Edwardsville, Illinois 62025
cwb@bcpklaw.com
cjp@bcpklaw.com
brk@bcpklaw.com

Christopher E. Roberts
David T. Butsch
BUTSCH ROBERTS & ASSOCIATES LLC
231 S. Bemiston Avenue, Suite 260
Clayton, MO 63105
butsch@butschroberts.com
croberts@butschroberts.com

/s/ *Amy L. Lenz*