EXHIBIT A

***EFILED***
Case Number 2023LA000615
Date: 4/20/2023 3:41 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS**

| | | |
|---|---|---|
| DENNIS LANCASTER, individually and on behalf of all others similarly situated, | ) ) | |
| | ) | **2023LA000615** |
| Plaintiff, | ) ) | Case No. |
| vs. | ) ) | CLASS ACTION |
| LEWIS AND CLARK COMMUNITY COLLEGE, | ) ) ) | DEMAND FOR JURY TRIAL |
| Defendant. | ) ) | |

## CLASS ACTION COMPLAINT

Plaintiff Dennis Lancaster ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant, Lewis and Clark Community College ("Lewis and Clark" or "Defendant"), and states:

### INTRODUCTION

1. Lewis and Clark, a university, lost control over current and former students and employees' highly sensitive personal and medical information to cybercriminals in a security breach ("Data Breach") and then concealed the breach from them for many months. The Data Breach's victims include thousands of persons, who disclosed their highly sensitive medical and personal information to Lewis and Clark, expecting that Lewis and Clark would safeguard it and timely warn them of security breaches. Lewis and Clark violated those duties and Illinois law. Plaintiff is a Data Breach victim and brings this class action on behalf of all persons harmed by Lewis and Clark's misconduct.

2. Lewis and Clark obtains Personal Health Information and Personally Identifying

Information ("PHI" and "PII") from Plaintiff and the putative class members in exchange for providing educational services and/or employment.

3. In November 2021, Lewis & Clark "experienced a ransomware incident." Lewis & Clark, for the following five months did not disclose that hackers had breached its systems, choosing instead to "investigate" the breach internally.

4. On April 21, 2022, Lewis & Clark first sent a letter to Plaintiff and the putative class members, alerting them of the ransomware incident, and that certain information had been compromised.

5. Plaintiff received the letter from Lewis & Clark on or about April 28, 2022.

6. On information and belief, cybercriminals were able to easily bypass Lewis and Clark's systems by using an administrative account, giving them high-level access to Lewis & Clark's files and wide-ranging data.

7. On information and belief, Lewis and Clark violates industry-standard medical records retention policies by storing sensitive PII and PHI in several locations, leaving the data protected in some systems but an unguarded target in others. Lewis and Clark's systems were inadequate and unable to prevent, detect, and stop the unauthorized hack before cybercriminal's pilfered its data.

8. In March 2022, Lewis and Clark's "investigation" revealed that cybercriminals had not only accessed administrative files and "folders containing certain data," but had, in fact, accessed vast amounts of PHI and PII, including: addresses, dates of birth, driver's license number and other forms of other government issued identification, facial photographs, account numbers and security codes, health insurance information, medical information, passport numbers, social security numbers and student identification numbers.

9.      On learning of this disturbing breach, Lewis and Clark failed to immediately warn Plaintiff and the putative class members that it lost control over PHI and PII, inexplicably waiting multiple months to notify them.

10.     Lewis and Clark's failures to protect  sensitive PHI and PII and warn Plaintiff and the putative class members promptly and fully about the data breach violates Illinois law and harms thousands of persons, causing Plaintiff to seek relief on a class wide basis.

## PARTIES

11.     Plaintiff is an individual who resides in Edwardsville, Illinois. Lancaster is a former student of Lewis and Clark who provided personal data to Lewis and Clark.

12.     Lewis and Clark is a college with locations in Edwardsville, Godfrey and East Alton, Illinois.

## JURISDICTION AND VENUE

13.     This Court has subject-matter jurisdiction over this class action lawsuit because it arises under Illinois law.

14.     This Court has personal jurisdiction over Lewis and Clark under 735 ILCS5/2-209 because Plaintiff's claims arise out of and relate to Lewis and Clark's conduct in Illinois.

15.     Venue is proper in this Court under 735 ILCS 5/2-101(2) because the transactions or some part thereof out of which the cause of action arouse occurred in Madison County.

## FACTUAL BACKGROUND

16.     Lewis and Clark is a community college with multiple locations in Illinois.

17.     Lewis and Clark obtained PHI and PII from employees and persons who attend its schools.

18.     As part of its services, Lewis and Clark requires that consumers disclose their PII

and PHI, including their addresses, dates of birth, driver's license number and other forms of other

government issued identification, facial photographs, certain account numbers and security codes,

health insurance information, medical information, passport numbers, social security numbers and

student identification numbers.

19.     In exchange for this information, Lewis and Clark promises to safeguard Plaintiff's

and the putative class members' PHI and PII and has a variety of privacy notices that agree to

protect PHI and PII.

### Lewis and Clark Fails to Safeguard PHI and PII

20.     Plaintiff and the proposed Class are current Lewis and Clark students and/or

employees.

21.     As a condition to providing educational services and/or employment, Lewis and

Clark required Plaintiff and the putative class members to provide their PII and PHI.

22.     Lewis and Clark then collected and maintained their PII and PHI in its computer

systems.

23.     On information and belief, Lewis and Clark does not adequately train its employees

on security protocols to securely maintain their credentials and access information.

24.     On information and belief, Lewis and Clark became aware in November 2021 that

cybercriminals attacked and infiltrated Lewis and Clark's systems, compromising PII and PHI of

Plaintiff and the putative class members.

25.     On information and belief, Lewis and Clark did not have adequate security protocols

to prevent, detect, and stop the cybercriminals from accessing the PII and PHI of Plaintiff and the

putative class members.

26.     Lewis and Clark did not immediately inform Plaintiff and the putative class

members about the Data Breach. Instead, Lewis and Clark continued its "investigation" for numerous months, inexplicably dragging it out while Plaintiff and the putative class members were unaware that cybercriminals had accessed their highly sensitive PII and PHI.

27.     In March 2022, following its investigation, Lewis and Clark learned that hackers had, in fact, accessed a vast trove of PII and PHI. Lewis and Clark sent notices to Plaintiff and the putative class members one month later, on April 21, 2022 that the data discussed above was potentially compromised ("the Notice").

28.     The Notice did not explain who breached Lewis and Clark's systems, how the Data Breach occurred, how Lewis and Clark learned about the breach, or why Lewis and Clark took months to notify Plaintiff and the putative class members that their highly sensitive PII and PHI had been potentially accessed by cybercriminals.

29.     The Notice then explained what Lewis and Clark was purportedly doing to prevent future breaches - all of which should have been in place before the Data Breach.

30.     As a result of the Data Breach, Lewis and Clark's victims face a lifetime risk of identity theft, as it includes sensitive information that cannot be changed, like their dates of birth and Social Security numbers. Despite this lifetime risk, Lewis and Clark offered its victims only 12 months of identity theft protection services.

31.     On information and belief, Lewis and Clark failed to adequately train its employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over Plaintiff's and the putative class members' PII and PHI. Lewis and Clark's negligence is evidenced by its failure to recognize the Data Breach until cybercriminals had already accessed sensitive data, meaning Lewis and Clark had no effective means to detect and prevent attempted data breaches. Moreover, Lewis and Clark should have had adequate security protocols

in place before the Data Breach.

32.     Plaintiff was disturbed by the Data Breach's nature and the thought of cybercriminals accessing his highly sensitive PHI and PII. He was also outraged that Lewis and Clark had taken many months to tell him about the Data Breach, without explaining its delay or why it refused to disclose the breach months after it knew his information may have been compromised.

33.     Plaintiff has spent considerable time and effort monitoring his accounts to protect himself from additional identity theft. Plaintiff fears for his personal financial security and uncertainty over what information was revealed in the Data Breach. He is experiencing feelings of anxiety, sleep disruption, stress, and fear because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that is contemplated and addressed by law.

34.     Further, Plaintiff is unsure what has happened to his PHI and PII as Lewis and Clark has been unwilling to disclose the true nature of the Data Breach, despite Plaintiff's requests.

**Plaintiff and the Proposed Class Face Significant Risk of Identity Theft**

35.     Plaintiff and members of the proposed Class have suffered injury from the misuse of their PHI and PII that can be directly traced to Lewis and Clark.

36.     The ramifications of Lewis and Clark's failure to keep Plaintiff's and the putative class members' PHI and PII secure are severe. Identity theft occurs when someone uses another's personal and financial information such as that person's name, account number, Social Security number, driver's license number, date of birth, or other information, without permission, to commit fraud or other crimes.

37.     According to experts, one out of four data breach notification recipients become a victim of identity fraud.

38.     Because Lewis and Clark failed to prevent the Data Breach, Plaintiff and the putative class members have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering: (a) The loss of the opportunity to control how their PII and PHI are used; (b) The diminution in value of their PII and PHI; (c) The compromise and continuing publication of their PHI and PII; (d) Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud; (e) Lost opportunity costs and lost wages associated with the time and effort expended addressing and trying to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud; (f) Unauthorized use of stolen PII and PHI; and, the continued risk to their PHI and PII, which remains in the possession of Lewis and Clark and is subject to further breaches so long as Lewis and Clark fails to undertake the appropriate measures to protect the PII and PHI in their possession.

39.     Stolen PII and PHI is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PHI can be worth up to $1,000.00 depending on the type of information obtained.

40.     The value of Plaintiff's and the putative class members' PII and PHI on the black market is considerable. Stolen PII and PHI trades on the black market for years, and criminals often post stolen private information openly on various "dark web" internet websites, making the information publicly available, for a fee.

41.     It can take victims years to spot identity or PII and PHI theft, giving criminals time to sell that information for cash.

42.     According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses that year, leading to more than $3.5 billion in losses to individuals and business victims.

43.     Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good." Lewis and Clark did not rapidly report to Plaintiff, the Class that their PHI and/or PII had been compromised.

44.     Victims of identity theft also often suffer embarrassment, blackmail, or harassment in person or online, and experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

45.     Along with out-of-pocket expenses that can exceed thousands of dollars for the victim of new account identity theft, and the emotional toll identity theft can take, some victims must spend a considerable time repairing the damage caused by the theft of their PII and PHI. Victims of new account identity theft will likely have to spend time correcting fraudulent information in their credit reports and continually monitor their reports for future inaccuracies, close existing bank/credit accounts, open new ones, and dispute charges with creditors.

46.     Further complicating the issues faced by victims of identity theft, data thieves may wait years before trying to use the stolen PII and PHI. To protect themselves, Plaintiff and the putative class members will need to remain vigilant against unauthorized data use for years or even decades to come.

47.     The Federal Trade Commission ("FTC") has also recognized that consumer data is a new and valuable form of currency. In an FTC roundtable presentation, former Commissioner,

Pamela Jones Harbour, stated that "most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency."

48.     The FTC has also issued several guidelines for businesses that highlight reasonable data security practices. The FTC has noted the need to factor data security into all business decision-making. According to the FTC, data security requires: (1) encrypting information stored on computer networks; (2) retaining payment card information only as long as necessary; (3) properly disposing of personal information that is no longer needed; (4) limiting administrative access to business systems; (5) using industry-tested and accepted methods for securing data; (6) monitoring activity on networks to uncover unapproved activity; (7) verifying that privacy and security features function properly; (8) testing for common vulnerabilities; and (9) updating and patching third-party software.

49.     According to the FTC, unauthorized PII and PHI disclosures are extremely damaging to consumers' finances, credit history, and reputation, and can take time, money, and patience to resolve the fallout. The FTC treats the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5(a) of the FTC Act.

50.     To that end, the FTC has issued orders against businesses that failed to employ reasonable measures to secure sensitive payment card data. See In the matter of Lookout Services, Inc., No. C-4326, ℙ 7 (June 15, 2011) ("[Defendant] allowed users to bypass authentication procedures" and "failed to employ sufficient measures to detect and prevent unauthorized access to computer networks, such as employing an intrusion detection system and monitoring system logs."); In the matter of DSW, Inc., No. C-4157, ℙ 7 (Mar. 7, 2006) ("[Defendant] failed to employ

sufficient measures to detect unauthorized access."); In the matter of The TJX Cos., Inc., No. C-4227 (Jul. 29, 2008) ("[R]espondent stored . . . personal information obtained to verify checks and process unreceipted returns in clear text on its in-store and corporate networks[,]" "did not require network administrators . . . to use different passwords to access different programs, computers, and networks[,]" and "failed to employ sufficient measures to detect and prevent unauthorized access to computer networks . . ."); In the matter of Dave & Buster's Inc., No. C-4291 (May 20, 2010) ("[Defendant] failed to monitor and filter outbound traffic from its networks to identify and block export of sensitive personal information without authorization" and "failed to use readily available security measures to limit access between instore networks . . ."). These orders, which all preceded the Data Breach, further clarify the measures businesses must take to meet their data security obligations.

## CLASS ACTION ALLEGATIONS

51.     Plaintiff brings this action on behalf of class of all other persons or entities similarly situated in the state of Illinois (the "Class").

52.     The Class of persons Plaintiff proposes to represent are tentatively defined as: All individuals residing in Illinois whose PII and/or PHI was compromised in the Data Breach disclosed by Lewis and Clark on or about April 21 2022.

53.     Excluded from the Class are counsel, Lewis and Clark, any entities in which Lewis and Clark has a controlling interest, Lewis and Clark's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

54.     The Class defined above is identifiable through Lewis and Clark's business records.

55.     There are thousands of potential Class members.

56.     Individual joinder of these persons is impracticable.

57.     Plaintiff is a member of the Class.

58.     There are questions of law and fact common to Plaintiff and to the proposed Class,

including but not limited to the following:

     a.     Whether Lewis and Clark had a duty to use reasonable care in safeguarding Plaintiff and the putative class members' PII and PHI;

     b.     Whether Lewis and Clark failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

     c.     Whether Lewis and Clark was negligent in maintaining, protecting, and securing PII and PHI;

     d.     Whether Lewis and Clark breached contract promises to safeguard Plaintiff and the putative class members' PII and PHI;

     e.     Whether Lewis and Clark took reasonable measures to determine the extent of the Data Breach after discovering it;

     f.     Whether Lewis and Clark's Breach Notice was reasonable;

     g.     Whether the Data Breach caused Plaintiff and the putative class members' injuries;

     h.     What the proper damages measure is;

     i.     Whether Lewis and Clark violated the statutes alleged in this complaint; and,

     j.     Whether Plaintiff and the putative class members are entitled to damages, treble damages, or injunctive relief.

59.     Plaintiff's claims are typical of the claims of the putative class members.

60.     Plaintiff is an adequate representative of the Class because his interests do not

conflict with the interests of the Class, he will fairly and adequately protect the interests of the Class, and he is represented by counsel skilled and experienced in class actions.

61.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of putative class members, which will be ascertainable from records maintained by Lewis and Clark.

62.     The likelihood that individual members of the putative class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

63.     Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

### FIRST CLAIM FOR RELIEF
### Negligence
### (On Behalf of Plaintiff and the Class)

64.     Plaintiff incorporates all previous paragraphs as if fully set forth below.

65.     Plaintiff and members of the Class entrusted their PII and PHI to Lewis and Clark. Lewis and Clark owed to Plaintiff and other members of the putative class a duty to exercise reasonable care in handling and using the PII and PHI in its care and custody, including implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that came to pass, and to promptly detect attempts at unauthorized access.

66.     Lewis and Clark owed a duty of care to Plaintiff and members of the Class because it was foreseeable that Defendant's failure to adequately safeguard their PII and PHI in accordance with state-of-the-art industry standards for data security would result in the compromise of that PII and PHI—just like the Data Breach that ultimately came to pass. Defendant acted with wanton and

reckless disregard for the security and confidentiality of Plaintiff's and members of the class's PII and PHI by disclosing and providing access to this information to third parties and by failing to properly supervise both the way the PII and PHI was stored, used, and exchanged, and those in its employ who made that happen.

67.     Defendant owed to Plaintiff and members of the class a duty to notify them within a reasonable time frame of any breach to the security of their PII and PHI. Defendant also owed a duty to timely and accurately disclose to Plaintiff and members of the Class the scope, nature, and occurrence of the Data Breach. This duty is required and necessary for Plaintiff and members of the class to take appropriate measures to protect their PII and PHI, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

68.     Defendant owed these duties to Plaintiff and members of the class because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security protocols. Defendant actively sought and obtained Plaintiff's and members of the class's PII and PHI for medical treatment services. Plaintiff and members of the class needed to provide their PII and PHI to Defendant to receive medical treatment and services from Defendant, and Defendant retained that information.

69.     The risk that unauthorized persons would try to gain access to the PII and PHI and misuse it was foreseeable. Given that Defendant holds vast amounts of PII and PHI, it was inevitable that unauthorized individuals would try to access Defendant's databases containing the PII and PHI—whether by malware or otherwise.

70.     PII and PHI is highly valuable, and Defendant knew, or should have known, the

risk in obtaining, using, handling, emailing, and storing the PII and PHI of Plaintiff and members of the class and the importance of exercising reasonable care in handling it.

71.    Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and PII and PHI of Plaintiff and members of the class which actually and proximately caused the Data Breach and Plaintiff's and members of the class's injury. Defendant also breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and members of the class, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff's and members of the class's injuries-in-fact. As a direct and traceable result of Defendant's negligence or negligent supervision, Plaintiff, and members of the class have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

72.    Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff's and members of the class's actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII and PHI by criminals, improper disclosure of their PII and PHI, lost benefit of their bargain, lost value of their PII and PHI, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

**SECOND CLAIM FOR RELIEF**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

73.    Plaintiff incorporates all previous paragraphs as if fully set forth below.

74.    Defendant offered to provide goods and services to Plaintiff and members of the

class in exchange for payment.

75.     Defendant also required Plaintiff and the members of the class to provide Defendant with their PII and PHI to receive services.

76.     In turn, and through the Notice of Privacy Practices, Defendant agreed it would not disclose the PHI it collects to unauthorized persons. Defendant also impliedly promised to maintain safeguards to protect Plaintiff's and the putative class members' PII and PHI.

77.     Plaintiff and the members of the class accepted Defendant's offer by providing PII and PHI to Defendant in exchange for receiving Defendant's goods and services and then by paying for and receiving the same.

78.     Implicit in the parties' agreement was that Defendant would provide Plaintiff and members of the class with prompt and adequate notice of all unauthorized access or theft of their PII and PHI.

79.     Plaintiff and the members of the class would not have entrusted their PII and PHI to Defendant without such agreement with Defendant.

80.     Defendant materially breached the contract(s) it had entered with Plaintiff and members of the class by failing to safeguard such information and failing to notify them promptly of the intrusion into its computer systems that compromised such information. Defendant also breached the implied contracts with Plaintiff and members of the class by (a) Failing to properly safeguard and protect Plaintiff's and members of the class's PII and PHI; (b) Violating industry standards as well as legal obligations that are necessarily incorporated into the parties' agreement; (c) Failing to ensure the confidentiality and integrity of electronic PII and PHI that Defendant created, received, maintained, and transmitted in violation of 45 C.F.R. § 164.306(a)(1).

81.     The damages sustained by Plaintiff and members of the class as described above

were the direct and proximate result of Defendant's material breaches of its agreement(s).

82.     Plaintiff and members of the class have performed under the relevant agreements, or such performance was waived by the conduct of Defendant.

83.     The convent of good faith and fair dealing is an element of every contract. All such contracts impose on each party a duty of good faith and fair dealing. The parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract along with its form.

84.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.

85.     Defendant failed to advise Plaintiff and members of the class of the Data Breach promptly and sufficiently.

86.     In these and other ways, Defendant violated its duty of good faith and fair dealing.

87.     Plaintiff and members of the class have sustained damages because of Defendant's breaches of its agreement, including breaches of it through violations of the covenant of good faith and fair dealing.

### THIRD CAUSE OF ACTION
### Unjust Enrichment
### (On Behalf of the Plaintiff and the Class)

88.     Plaintiff incorporates all previous paragraphs as if fully set forth below.

89.     This claim is plead in the alternative to the breach of contract claim.

90.     Plaintiff and members of the class conferred a monetary benefit upon Defendant in

the form of monies paid for treatment services.

91.     Defendant appreciated or knew about the benefits conferred upon itself by Plaintiff and members of the class. Defendant also benefited from the receipt of Plaintiff's and members of the Class's PII and PHI, as this was used to facilitate payment for Defendant's services.

92.     As a result of Defendant's conduct, Plaintiff, and members of the class suffered actual damages in an amount equal to the difference in value between their purchases made with reasonable data privacy and security practices and procedures that Plaintiff and members of the class paid for, and those purchases without unreasonable data privacy and security practices and procedures that they received.

93.     Under principals of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and members of the class because Defendant failed to implement (or adequately implement) the data privacy and security practices and procedures for itself that Plaintiff and members of the class paid for and that were otherwise mandated by federal, state, and local laws and industry standards.

94.     Defendant should be compelled to disgorge into a common fund to benefit Plaintiff and members of the class all unlawful or inequitable proceeds received by it as a result of the conduct and Data Breach alleged here.

### FOURTH CLAIM FOR RELIEF
**Violation of Illinois Consumer Fraud and Deceptive Business Practices Act
815 Ill. Comp. Stat. 505/1 *et seq.*
(On Behalf of the Plaintiff and the Class)**

95.     Plaintiff incorporates all previous paragraphs as if fully set forth below.

96.     The Illinois Personal Information Protection Act ("IPIPA"), 815 ILCS 530/20 provides that a violation of that statute constitutes an unlawful practice under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("ICFA"), which prohibits

unfair and deceptive acts or practices in the conduct of trade and commerce.

97.     Defendant is a "data collector" under IPIPA. As a data collector, Defendant owns or licenses information concerning Illinois residents.

98.     The IPIPA requires a data collector that "maintains or stores… records that contain personal information concerning an Illinois resident shall implement and maintain reasonable security measures to protect those records from unauthorized access, acquisition, … use, … or disclosure." IPIPA, 815 Ill. Comp. Stat. 530/45(a).

99.     The IPIPA further requires that data collectors to "notify the resident at no charge that there has been a breach of the security of the system data following discovery or notification of the breach. The disclosure notification shall be made in the most *expedient* time possible and *without unreasonable delay*, consistent with any measures necessary to determine the scope of the breach and restore the reasonable integrity, security, and confidentiality of the data system." (emphasis added).

100.     As alleged above, Defendant violated the IPIPA by failing to implement and maintain reasonable security measures to protect Plaintiff and the Class's PHI and PII. Defendant further violated the IPIPA by failing to give Plaintiff and the Class expedient notice without unreasonable delay.

101.     As a direct and proximate cause of Defendant's failures, Plaintiff and the Class have suffered actual damages.

## **PRAYER FOR RELIEF**

Plaintiff and members of the Class demand a jury trial on all claims so triable and request that the Court enter an order:

A.   Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing him counsel to represent the Class;

B.   Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class;

C.   Awarding injunctive relief as is necessary to protect the interests of Plaintiff and the Class;

D.   Enjoining Lewis and Clark from further deceptive and unfair practices and making untrue statements about the Data Breach and the stolen PHI and PII;

E.   Awarding Plaintiff and the Class damages that include compensatory, exemplary, punitive damages, and statutory damages, including pre- and post-judgment interest, in an amount to be proven at trial;

F.   Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G.   Awarding attorneys' fees and costs, as allowed by law;

H.   Awarding prejudgment and post-judgment interest, as provided by law;

I.   Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J.   Granting such other or further relief as may be appropriate under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this 20th day of April, 2023.

BYRON CARLSON PETRI & KALB, LLC

By:    /s/ *Christopher W. Byron*
       Christopher W. Byron, #6230810
       Christopher J. Petri, #6257456
       Brian R. Kalb, #6275228
       411 St. Louis Street
       Edwardsville, Illinois 62025
       Tel: (618) 655.0600
       Fax: (618) 655.4004
       cwb@bcpklaw.com
       cjp@bcpklaw.com
       brk@bcpklaw.com

       and

       Christopher E. Roberts #6302857
       David T. Butsch #6205434
       Butsch Roberts & Associates LLC
       231 S. Bemiston Ave., Suite 260
       Clayton, MO  63105
       Tel: (314) 863-5700
       Fax: (314) 863-5711
       butsch@butschroberts.com
       croberts@butschroberts.com

       ***Attorneys for Plaintiff and***
       ***Putative Class Representative***

***EFILED***
Case Number 2023LA000615
Date: 4/20/2023 3:41 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

# IN THE CIRCUIT COURT
## THIRD JUDICIAL CIRCUIT
### MADISON COUNTY, ILLINOIS

DENNIS LANCASTER, individually )
and on behalf of all others similarly situated, )
                                    )        **2023LA000615**
      Plaintiff,         )    Case No.
                                      )
      vs.                )    CLASS ACTION
                                      )
LEWIS AND CLARK COMMUNITY  )    DEMAND FOR JURY TRIAL
COLLEGE,                         )
                                        )
      Defendant.       )

## ENTRY OF APPEARANCE

COMES NOW Christopher W. Byron and Christopher J. Petri of Byron Carlson Petri &

Kalb, LLC and hereby enter his appearance as on behalf of Plaintiffs, Dennis Lancaster,

individually and on behalf of all other similarly situated.

Dated: April 20, 2023           Dennis Lancaster, individually and on behalf of all
                                     others similarly situated,

                                  */s/ Christopher W. Byron*
                                  Christopher W. Byron, #6230810
                                  Christopher J. Petri, #6257456
                                  Byron Carlson Petri & Kalb, LLC
                                  411 St. Louis Street
                                  Edwardsville, Illinois 62025
                                  Phone: (618) 655-0600
                                  Fax: (618) 655-4004
                                  cwb@bcpldaw.com
                                  cjp@bcpldaw.com

                                  ***Attorneys for Plaintiff and***
                                  ***Putative Class Representative***

***EFILED***
Case Number 2023LA000615
Date: 4/20/2023 3:41 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

### IN THE CIRCUIT COURT
### THIRD JUDICIAL CIRCUIT
### MADISON COUNTY, ILLINOIS

DENNIS LANCASTER, individually )
and on behalf of all others similarly situated, )
                            )
     Plaintiff,            )     Case No.      **2023LA000615**
                            )
     vs.                )     CLASS ACTION
                            )
LEWIS AND CLARK COMMUNITY      )     DEMAND FOR JURY TRIAL
COLLEGE,                     )
                            )
         Defendant.      )

### JURY DEMAND

COMES NOW Plaintiff, Dennis Lancaster, individually and on behalf of all other similarly situated. by its attorneys, Byron Carlson Petri & Kalb, LLC, and hereby requests a trial by jury of twelve (12) in this cause on all counts against it.

BYRON CARLSON PETRI & KALB, LLC

By:      /s/ *Christopher W. Byron*
            Christopher W. Byron, #6230810
            Christopher J. Petri, #6257456
            Brian R. Kalb, #6275228
            411 St. Louis Street
            Edwardsville, Illinois 62025
            Tel: (618) 655.0600
            Fax: (618) 655.4004
            cwb@bcpklaw.com
            cjp@bcpklaw.com
            brk@bcpklaw.com

            and

            Christopher E. Roberts #6302857
            David T. Butsch #6205434
            Butsch Roberts & Associates LLC
            231 S. Bemiston Ave., Suite 260
            Clayton, MO  63105

Tel: (314) 863-5700
Fax: (314) 863-5711
butsch@butschroberts.com
croberts@butschroberts.com

*Attorneys for Plaintiff and
Putative Class Representative*

***EFILED***
Case Number 2023LA000615
Date: 4/20/2023 3:41 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT**
**THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

DENNIS LANCASTER, individually )
and on behalf of all others similarly situated,)
                                    )

       Plaintiff,            )     Case No.  2023LA000615

       vs.                 )     CLASS ACTION

LEWIS AND CLARK COMMUNITY   )     DEMAND FOR JURY TRIAL
COLLEGE,                  )

       Defendant.        )

## AFFIDAVIT

COMES NOW Christopher W. Byron, being duly sworn upon his oath, and states to the Court as follows:

1. That I am one of the attorneys of record for the Plaintiff, Dennis Lancaster, individually and on behalf of all other similarly situated, and it is my belief that Plaintiff's damages are in excess of $50,000.00, based upon my investigation to date.

FURTHER AFFIANT SAYETH NOT.

_____
Christopher W. Byron

SUBSCRIBED AND SWORN TO before me this 20th day of April, 2023.

OFFICIAL SEAL
JAMI MILLER
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES: 02/24/2027

_____
Notary Public

22-_____
Page 1 of 1